In the Matter of the POWER AUTHORITY OF THE STATE OF NEW YORK, Appellant, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION, Respondent, and CATSKILL CENTER FOR CONSERVATION AND DEVELOPMENT, INC., et al., Intervenors-Respondents.

Third Department, April 8, 1982

### APPEARANCES OF COUNSEL

*Thomas R. Frey* (*Charles M. Pratt, Peter A. Guintini, James D. Lyons* and *Jennifer G. Tolson* of counsel), for appellant.

*Robert Abrams, Attorney-General* (*Lawrence A. Rappoport* and *Shirley Adelson Siegel* of counsel), for respondent.

*Norwick, Raggio, Jaffe & Kayser* (*Robert C. Stover* of counsel), for intervenors-respondents.

MAIN, J.

At some point in time during April of 1976, the Power Authority of the State of New York (hereafter Authority) made application to the Federal Energy Regulatory Commission (hereafter FERC) for a license to construct and operate a hydroelectric pumped storage power facility at Prattsville, New York, using as the supplier and receiver of water the already constructed Schoharie Reservoir on Schoharie Creek. A new reservoir would be constructed at a higher elevation in a natural basin on Dog Hill, and during those periods of time when the energy demands were modest, water from the Schoharie Reservoir would be pumped up and into the Dog Hill Reservoir. When energy demands were high this water would be released from Dog Hill Reservoir and would run through a series of reversible pump electrical generators where the kinetic energy would be transformed into electricity. After passing through the generators, the water would be discharged into a tailrace and then into the Schoharie Reservoir. The water from this reservoir flows through the Shandaken Tunnel into Esopus Creek and from there into the Ashokan Reservoir for use in the New York City water system. The Schoharie Reservoir and that portion of Esopus Creek between the Shandaken Tunnel outlet and the Ashokan Reservoir are designated as Class A waters (6 NYCRR 879.6, Item No. 5; 862.6, Item No. 555).

Prior to the grant of a license such as the Authority seeks, FERC requires compliance with section 401 of the Federal Water Pollution Control Act of 1972, as amended by the Clean Water Act of 1977 (US Code, tit 33, § 1341, subd [a], par [1]), which provides that if operation of the proposed facility would result in any discharge into navigable waters, the appropriate agency of the State in which the discharge occurs must certify that such discharge will comply with certain other applicable provisions of enumerated sections of the act. Accordingly, on May 27, 1977, the Authority, while not conceding that the operation of its proposed facility would result "in any discharge" mandating certification, nonetheless applied to the Department of Environmental Conservation (hereafter DEC) for a certifi-

cate with the expectation of at least a hearing on the issue of whether certification was necessary under the factual situation presented, and, if so, whether those facts would justify the issuance of a certificate. After the receipt of the application, which included relevant reports, studies and summaries, DEC entered into a memorandum of understanding with the Authority. The memorandum in substance acknowledged that FERC hearings in which the parties were participating were in progress, and that in order to avoid unnecessary duplication of effort, expense and inconvenience, it was desirable that any section 401 hearings or proceedings await the completion of the FERC hearings. Nonetheless, when in April of 1980 the intervenors sought a declaratory ruling, pursuant to section 204 of the State Administrative Procedure Act, based purely upon hypothetical facts, DEC issued the subject declaratory ruling. When Special Term rejected petitioner's contentions that the ruling was invalid and held that the determinations were not arbitrary or capricious and that the issue of the section 401 certification had been resolved by the Court of Appeals in *Matter of de Rham v Diamond* (32 NY2d 34), this appeal ensued.

We hold that the judgment of Special Term must be reversed. The declaratory ruling of DEC at issue in this proceeding was concededly based upon assumed facts, and DEC concluded in its decision, *inter alia,* that if the hypothetical situation assumed (relative to the Authority's proposed hydroelectric generating project) actually did exist, both section 401 certification and a State pollutant discharge elimination system permit would be required for the project. Significantly, however, since the assumed facts have never been shown to conform to the circumstances actually presented by the Authority's project, the subject ruling constitutes merely a futile intellectual exercise and clearly does not bind the Authority by requiring that it obtain the subject certification and permit for the project. Moreover, DEC's action in making the ruling ran directly contrary to its agreement with the Authority in the cited memorandum of understanding wherein it was agreed that it was desirable that section 401 proceedings await the

completion of the FERC hearings so as to avoid unnecessary duplication of effort, expense and inconvenience.

In reaching these conclusions, we emphasize that a primary purpose of section 204 of the State Administrative Procedure Act is to assist the general public by facilitating action by administrative agencies in interpreting statutes and regulations which the different agencies must enforce and determining the applicability of the statutes and regulations to all the various situations which may from time to time be presented. Toward that end, a petitioner seeking a declaratory ruling from DEC, such as the intervenor here, must present "a full and carefully detailed description of all relevant facts and circumstances" at issue, and his petition "shall not be considered received until all information necessary to make a declaratory ruling has been received by the department" (6 NYCRR 619.1 [b]). Furthermore, it is significant that nowhere to be found in the pertinent statutes and regulations is any mention of a possible theoretical ruling by DEC premised upon an assumed hypothetical situation.

Such being the case, DEC in the present instance mistakenly relies upon 6 NYCRR Part 619 as authority for its issuance of a declaratory ruling based upon assumed facts. The obvious intent of Part 619 was to empower DEC to make declaratory rulings only if they are based upon the actual facts, established or conceded, of a genuine question, dispute or controversy, and therefore DEC plainly exceeded its jurisdiction and power and abused its discretionary authority under section 204 of the State Administrative Procedure Act in making the challenged ruling herein. That being so, the subject ruling must be annulled.

Lastly, we also note that in *Matter of de Rham v Diamond (supra)*, the Court of Appeals held, on the record in that case, that the Commissioner of DEC had made a reasonable determination with regard to the certification of a pumped storage hydroelectric facility proposed by the Consolidated Edison Company. However, by its decision, the court did not resolve whether or not the Authority's project in the instant case is subject to section 401 certification. Such a determination must necessarily await consid-

eration of the actual circumstances of the Authority's project.

The judgment should be reversed, on the law, without costs, the petition granted and DEC's declaratory ruling annulled.

KANE, J. P., CASEY, MIKOLL and YESAWICH, JR., JJ., concur.

Judgment reversed, on the law, without costs, petition granted, and the Department of Environmental Conservation's declaratory ruling annulled.