OPINION OF THE COURT
Michael C. Lynch, J.
Petitioners Entergy Nuclear Indian Point 2 LLC and Entergy Nuclear Indian Point 3 LLC (hereinafter Entergy or petitioners) are the entities that own nuclear power generating units known as Indian Point Generating Units 2 and 3 (IP2 and IP3). On or about November 5, 2012, petitioners filed an application with the respondent New York State Department of State (hereinafter DOS) for a declaratory ruling that IP2 and IP3 are not subject to review pursuant to a certain provision set forth in a *898 document titled, “New York State Coastal Management Program and Final Environmental Impact Statement” (http:// www.dos.ny.gov/communitieswaterfronts/pdfs/NY%20 CMP%20.pdf, cached at http://www.nycourts.gov/reporter/ webdocs/NY CMP .pdf [hereinafter CMP]). In response, the DOS advised that, because the CMP is not a “rule or statute enforceable by the [DOS],” the petitioners were not entitled to a declaratory ruling pursuant to the State Administrative Procedure Act. The DOS instead issued an “advisory” response that IP2 and IP3 were subject to the State’s Coastal Management Program. This hybrid CPLR article 78 and declaratory judgment action followed.
In 1959, the State of New York conveyed property located in Buchanan, New York and situate along the Hudson River to Consolidated Edison, Inc. (ConEd) so that it could construct the Indian Point nuclear power generating facility. In 1966, the United States Atomic Energy Commission (AEG) issued a construction permit to ConEd to allow it to build IP2; in 1968, ConEd applied for an operating license. In 1972, the AEG issued its environmental impact statement (EIS), the Nuclear Regulatory Commission (NRC, the successor to the AEC) issued an operating license in 1973, and IP2 began generating electricity in 1974 (petition ¶ 37). Entergy purchased IP2 from ConEd in 2001.
In October 1968, ConEd applied for an operating license for IP3 and thereafter began to construct the unit. In 1974, the New York State Legislature authorized the State’s Power Authority (NYPA) to acquire IP3. The NRC completed the EIS for IP3 in February 1975 and issued the operating license in December 1975. IP3 began generating electricity in 1976. Entergy purchased IP3 from NYPA in 2000.
On April 30, 2007, Entergy submitted a license renewal application to the NRC requesting a 20-year extension of the existing operating licenses for IP2 and IP3. The IP3 license expires in 2015; the IP2 license expired this year but has been extended pending review.
As the Hudson River is within the “coastal zone” (see 16 USC § 1453 [1]), Entergy’s license application is subject to the provisions of the Federal Coastal Zone Management Act (CZMA) and its regulations (16 USC § 1451 et seq.). In relevant part, the CZMA provides that a “coastal state,” like New York State (16 USC § 1453 [4]), may develop a “management program” that “includes ... a comprehensive statement in words, maps, il *899 lustrations, or other media of communication, prepared and adopted by the state in accordance with [the CZMA], setting forth objectives, policies, and standards to guide public and private uses of lands and waters in the coastal zone” (16 USC § 1453 [12]).
In 1981, the New York State Legislature enacted the Waterfront Revitalization and Coastal Resources Act (hereinafter Waterfront Act) to “provide[ ] for the establishment of the New York State Coastal Management Program, pursuant to the [CZMA]” (Mem in Support, Bill Jacket, L 1981, ch 840, 1981 NY Legis Ann at 441; see Executive Law art 42). Therein, the DOS was authorized to administer the State’s Waterfront Act and to promulgate rules and regulations as required in furtherance of the statute (Executive Law § 913). In 1982, pursuant to authority set forth in the Waterfront Act, the DOS issued the CMP which is the focus of the instant dispute. The CMP describes “the forty-four coastal policies with which all State agency actions must be consistent” and provides the “framework for government decision-making which affects New York’s coastal area” (CMP part I at 1). These coastal policies are implemented through, among other authorities, the Waterfront Act and its regulations (19 NYCRR 600.1 et seq.) and the State Environmental Quality Review Act (ECL 8-0101 et seq. [hereinafter SEQRA]) and its regulations (6 NYCRR part 617; see CMP appendices A, E, F).
The National Oceanic and Atmospheric Administration (NOAA), on behalf of the United States Secretary of Commerce, approved New York State’s coastal management program in September 1982 (petition ¶ 47; see 16 USC §§ 1454, 1455). Accordingly; the CZMA provides that New York State is entitled to participate in “consistency” review (16 USC § 1456) and the renewal applications pending before the NRC are subject to federal regulations governing “Consistency for Activities Requiring a Federal License or Permit” (see 15 CFR part 930, subpart D). The regulations obligate the applicant to provide to both the federal reviewing agency and the DOS, as New York State’s reviewing agency, “a certification that the proposed activity complies with and will be conducted in a manner consistent with the [CMP]” (15 CFR 930.57 [a]; 930.58). Notably, the applicant must include with its submissions to the State “[a]n evaluation that includes a set of findings relating the coastal effects of the proposal and its associated facilities to the relevant enforceable policies of the [State’s] management program. Ap *900 plicants shall demonstrate that the activity will be consistent with the enforceable policies of the management program.” (15 CFR 930.58 [a] [3]; 930.57.)
Upon receipt of a complete application, the DOS has six months to review the consistency certification (15 CFR 930.59), during which time it must provide public notice and allow an opportunity for public comment (15 CFR 930.61). Thereafter, the State may either concur with or object to the certification (15 CFR 930.62, 930.63). If the State objects to the certification, the federal agency may not issue the license unless, after an appeal, the Federal Secretary of Commerce overrides the State’s objection upon a finding that “the activity is consistent with the objectives or purposes of the Coastal Zone Management Act, or is necessary in the interest of national security” (15 CFR 930.63 [e]; 930.64; part 930, subpart H). Here, petitioners’ consistency certification for the IP2 and IP3 license renewals is pending. Petitioners advise that the DOS’s response to the certification is due on March 22, 2014 (correspondence dated Oct. 15, 2013).
Citing the need for “special discussion” with regard to federal program requirements “pertaining to national interest, uses of regional benefit, Federal consistency and public participation,” New York State’s CMP includes a section that reviews “SPECIAL FEDERAL PROGRAM REQUIREMENTS” (CMP part II, § 9 at 1). Relevant to this dispute, the CMP provides:
“The projects which meet one of the following two criteria have been determined to [be] projects for which a substantial amount of time, money and effort have been expended, and will not be subject to New York State’s Coastal Management Program and therefore will not be subject to review pursuant to the Federal consistency procedures of the Federal Coastal Zone Management Act of 1972, as amended: (1) those projects identified as grandfathered pursuant to the SEQRA at the time of its enactment in 1976; and (2) those projects for which a final Environmental Impact Statement has been prepared prior to the effective date of the Department of State Part 600 regulations [see Appendix A, DOS Consistency Regulations NYCRR Title 19, Part 600, (600.3 [d])].” (CMP part II, § 9 at 1.)
On November 5, 2012, the petitioners filed a petition for declaratory relief pursuant to State Administrative Procedure Act § 204 seeking “a declaratory ruling that IP2 and IP3 are not subject to review for consistency with the enforceable poli *901 cies of the New York State Coastal Management Plan.” In sum, the petitioners argued that, because the IP2 and IP3 units were grandfathered under SEQRA and the environmental impact statements were adopted before the effective date of the regulations administering the Waterfront Act (19 NYCRR part 600 et seq.), IP2 and IP3 are exempt from consistency review pursuant to the policies set forth in the CMP Consequently, petitioners argue, the pending applications to renew the operating licenses of IP2 and IP3 are exempt from the CMP’s consistency certification process (mem of law ¶ 1).
On January 9, 2013, after seeking and obtaining an extension of time for its response, the DOS issued its determination. First, the DOS ruled that the CMP is “not an appropriate subject for a declaratory ruling” because it is “not a ‘rule or statute enforceable by [the DOS]’ as it has neither been enacted by the State Legislature nor promulgated as a rule pursuant to [the State Administrative Procedure Act]” (return at 11). Notwithstanding that, in recognition of its obligation to offer “assistance” to applicants with regard to whether a proposed action may be exempt under the CMP criteria, the DOS included a substantive response, albeit characterized as “advisory only,” that the IP2 and IP3 were subject to the CMP
Petitioners commenced this hybrid CPLR article 78 proceeding and declaratory judgment action to challenge the respondent’s ruling. First, petitioners contend that the DOS’s “denial” of the petition was “arbitrary and capricious, an abuse of discretion, and contrary to law” (first cause of action). Second, petitioners seek a declaration that IP2 and IP3 qualify as “grandfathered” under the CMP and thus, are not subject to federal consistency review (second cause of action).
Preliminarily, the court rejects the respondents’ apparent claims that the CZMA preempts the CMP and that the State lacks jurisdiction to review the issues presented. Respondents correctly contend that the CZMA specifically mandates that federal agency activities must be “consistent to the maximum extent practicable with the enforceable policies of approved State management programs” (16 USC § 1456 [c] [1] [A]). In addition, however, the CZMA also explicitly states that the CZMA should not be construed “to diminish . . . state jurisdiction, responsibility, or rights in the field of planning, development, or control of water resources, submerged lands, or navigable waters” (16 USC § 1456 [e] [1]; see California Coastal Comm’n v Granite Rock Co., 480 US 572, 592 [1987]). In this *902 court’s view, the State’s authority under the CZMA includes the discretion to decline to review certain activities for consistency with its management program (see e.g. 15 CFR 930.53 [a] [the State must identify those activities that it wishes to review for federal consistency]; 930.62 [State’s concurrence with an applicant’s consistency certification will be presumed if State does not respond within requisite time]).
The State Administrative Procedure Act permits agencies to issue, upon request, declaratory rulings “with respect to (i) the applicability to any person, property, or state of facts of any rule or statute enforceable by it, or (ii) whether any action by it should be taken pursuant to a rule” (§ 204 [1]). Similarly, regulations promulgated by the DOS provide:
“Generally, a declaratory ruling is a binding advisory opinion as to the applicability of a rule or statute to a particular state of facts, the purpose of which is to give guidance before rather than after the conduct in question occurs. Most often, it addresses a set of operable facts which the petitioner poses as a future plan of action and can give binding assurance to the petitioner that certain consequences will flow from future conduct unless the declaratory ruling is set aside or modified by a court of competent jurisdiction or the law is changed by act of the Legislature. A declaratory ruling, however, will not extend or limit a rule or statute beyond that which might be reasonably educed from the language of the rule or the statute in question. Where a declaratory ruling would be, in effect, a regulation then regulations will be published and properly promulgated.” (19 NYCRR 264.1 [b].)
The agency is not obligated to issue a ruling upon a request; rather, it may exercise its discretionary authority to decline a request for a ruling (State Administrative Procedure Act § 204 [2] [a]; see Matter of Humane Socy. of U.S., Inc. v Brennan, 63 AD3d 1419, 1420 [2009]). Indeed,
“the only limitations upon the authority of an agency to issue a declaratory ruling are the discretion of the agency to withhold a ruling, the power of the agency to regulate the procedure governing petitions seeking a ruling, the power of a court to alter a ruling or set it aside, and the power of the agency to change the ruling prospectively.” (Matter of Power Auth. of State of N.Y. v New York State Dept, of *903 Envtl. Conservation, 58 NY2d 427, 434 [1983].)
A party may seek review of an agency’s ruling or its refusal to issue a ruling by commencing a proceeding pursuant to CPLR article 78 (Dairy Barn Stores v State Liq. Auth., 67 AD2d 692 [1979]). Where, as here, an agency has refused to issue a ruling, the court’s authority in a CPLR article 78 proceeding is limited; while it may remand the proceeding to the agency for a ruling, it may not issue a declaratory ruling in the agency’s stead (id.).
Here, in response to the petitioner’s request “for a declaratory ruling that IP2 and IP3 are not subject to review for consistency with the enforceable policies of New York’s Coastal Management Plan,” the DOS responded: “The CMP text is not a ‘rule or statute enforceable by [DOS]’ as it has neither been enacted by the State Legislature nor promulgated as a rule pursuant to SAPA . . . Thus the interpretation of the CMP is not an appropriate subject for a declaratory ruling” (return 19).
As relevant to the issue presented, the State Administrative Procedure Act defines a rule as “ ‘the whole or part of each agency statement, regulation or code of general applicability that implements or applies law,’ but excluding ‘interpretive statements and statements of general policy which in themselves have no legal effect but are merely explanatory’ ” (Cubas v Martinez, 8 NY3d 611, 621 [2007], quoting State Administrative Procedure Act § 102 [2] [a] [i]; [b] [iv]). Accordingly, “a ‘rule or regulation’ is ‘a fixed, general principle to be applied by an administrative agency without regard to other facts and circumstances relevant to the regulatory scheme of the statute it administers’ ” (id., quoting Matter of Roman Catholic Diocese of Albany v New York State Dept. of Health, 66 NY2d 948, 951 [1985]).
Here, in the context of the state and federal statutory and regulatory scheme, the court agrees with petitioners that the DOS had the authority to issue the requested declaratory ruling. The CMP is the document that provides the “framework” for decisions affecting coastal areas in New York State, and is the heart of the State’s coastal management program that was approved by NOAA. Pursuant to the CZMA, a state’s “management program” is “a comprehensive statement in words, maps, illustrations, or other media of communication, prepared and adopted by the state in accordance with the provisions of this chapter, setting forth objectives, policies, and standards to guide public and private uses of lands and waters in the coastal zone.” (16 USC § 1453 [12].) New York State’s “management program”
*904 includes the CMfj but the CMP incorporates and is implemented by statutory and regulatory authorities, including the Waterfront Act and SEQRA (CMP part I at 1; Executive Law art 42; 19 NYCRR part 600; ECL art 8; 6 NYCRR part 617). By approving the State’s management program, the Secretary of Commerce necessarily determined that the State’s program, which includes the CMP and the statutes and regulations referenced therein, was consistent with and would further the policies and purposes of the CZMA (16 USC § 1455 [d] [1]). Moreover, by such approval, it is apparent that the State had demonstrated that the program, “taken together,” allows for implementation of the stated coastal policies; that it requires the State and its authorized personnel to conform to the enforceable policies of the management program; and that the program includes provisions to ensure its enforcement (15 CFR 923.43 [c] [1]). Here, the question presented, whether the IP2 and IP3 are subject to review under the CMB is one that could have been addressed pursuant to State Administrative Procedure Act § 204 with reference to the State’s coastal management program, which incorporates the CZMA and its regulations, the Waterfront Act and its regulations, and the CM!) and is administered by the Department of State.
In this court’s view, the DOS too narrowly framed the issue as addressing simply the interpretation of the CMP with respect to IP2 and IP3. Rather, in context, the question presented was whether, based on the referenced “grandfather” policy stated in the CME] the State planned to subject IP2 and IP3 to consistency review pursuant to the State’s approved coastal management program. Accordingly, the court finds that the DOS’s refusal to issue the declaratory ruling was arbitrary and capricious (Dairy Barn Stores v State Liq. Auth., 67 AD2d 692 [1979]; see also Dairy Barn Stores v State Liq. Auth., 67 AD2d 691 [1979] [where it was arbitrary and capricious to refuse to issue a declaratory ruling with regard to the agency’s objections based, in part, on certain policy statements]).
While the DOS refused to characterize its ruling as a declaratory ruling pursuant to State Administrative Procedure Act § 204, it did issue a ruling that it deemed to be “advisory” only. Here, it is apparent that the advisory opinion is the Department’s “definitive position” with regard to whether it considers IP2 and IP3 to be subject to consistency review under the State’s Coastal Management Program (see e.g. Compass Adjusters & Investigators v Commissioner of Taxation & Fin. of *905 State of N.Y., 197 AD2d 38 [1994]). Accordingly, and in the interest of judicial economy, the court declines to remand the matter to the DOS to issue a formal ruling (see Dairy Barn Stores, 67 AD2d 692) and will instead review the merits of the purported “advisory” response pursuant to State Administrative Procedure Act § 204 (1).
Where, as here, the court must review an agency’s response to a ruling pursuant to State Administrative Procedure Act §204,
“[i]t is settled that ‘the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld’ . . . Deference to such construction is appropriate where the language used in the statute is special or technical and does not consist of common words of clear import ... In addition, deference to an agency’s construction of a statute is warranted ‘[w]here the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices’ ” (Matter of New York State Assn. of Life Underwriters v New York State Banking Dept., 83 NY2d 353, 359-360 [1994]).
In 1975, the New York State Legislature designated the Department of State as the agency responsible for the administration of the CZMA in New York State (L 1975, ch 464, § 47). When the Waterfront Act was enacted in 1981 (L 1981, ch 840), the DOS was given the authority, inter alia, “[t]o evaluate and make recommendations on federal, state and local programs and legislation relating to coastal and inland waterway resources issues” (Executive Law § 913 [2]). The DOS’s interpretation of the CMP is thus entitled to deference so long as it is not unreasonable or irrational (id.).
As set forth above, the CMP provides in the “Introduction” to the section titled, “SPECIAL FEDERAL PROGRAM REQUIREMENTS” that certain projects “have been determined to [be] projects for which a substantial amount of time, money and effort have been expended” because they meet one of two identified criteria (CMP part II, § 9 at 1). This court finds that the respondent’s conclusion that the criteria did not apply to the license renewal applications submitted by IP2 and IP3 was rational.
*906 The “activity” at issue here is, of course, the renewal of each unit’s federal license and it is not disputed that neither unit has been subject to review pursuant to the CZMA.
The federal regulations distinguish license activity and “development projects” (15 CFR part 930, subparts C, D). Moreover, as relevant here, the CZMA regulations specifically provide that license renewals not previously reviewed by the State are subject to federal consistency (15 CFR 930.51 [b]). Similarly, in furtherance of the regulatory requirement that the State list those activities that it wishes to review for federal consistency (see 15 CFR 930.53), the State specifically identifies “[l]icensing and certification of the siting, construction, and operation of nuclear power plants” as an activity that is subject to the federal consistency provisions (CMP part II, § 9 at 20).
Petitioners now contend that the first criterion, “those projects identified as grandfathered pursuant to the SEQRA at the time of its enactment in 1976” (CMP part II, § 9 at 1), applies because IP2 and IP3 are grandfathered pursuant to the State Environmental Quality Review Act. In response to the request for a declaratory ruling, the DOS advised that while certain construction, modification, and acquisition activities and projects at IP3 were “identified” as grandfathered under SEQRA, the operation of IP2 and IP3 were never “identified” at the time that SEQRA was enacted. Accordingly, the DOS advised that the criterion did not apply to IP2 and IP3.
In this court’s view, deference to the DOS ruling is appropriate. Review of the legislative history reveals that in order to implement the provisions of the State Environmental Quality Review Act, each state agency was directed to provide a list of agency actions which the agency “deem[ed] to [be] approved” (see L 1976, ch 228, § 5; L 1977, ch 252). Upon receipt of such list, the State’s budget director was directed to review, and if appropriate, certify that “substantial time, work and money have been expended on such projects” and, thereafter, “submit . . . an official list of projects which shall be deemed approved and therefore not subject to the provisions of [SEQRA]” (L 1976, ch 228, § 5).
The listing requirement was not codified at article 8 of the Environmental Conservation Law. Instead, and in addition to the foregoing, the statute provides that, in general, its provisions do not apply to “[a]ctions undertaken or approved prior to the effective date of [SEQRA]” (ECL 8-0111 [5] [a], as added by L 1975, ch 612). This “grandfathering” provision in SEQRA is *907 separate and distinct from those actions that were specifically identified and “deem[ed] to [be] approved” (L 1976, ch 228, § 5) in furtherance of the phased implementation legislation in 1976 and 1977.
Here, the question presented is not, as petitioners suggest, whether the IP2 and IP3 are grandfathered pursuant to ECL 8-0111 (5) (see e.g. Matter of Salmon v Flacke, 91 AD2d 867 [1982], affd 61 NY2d 798 [1984]; Matter of Northeast Solite Corp. v Flacke, 91 AD2d 57 [1983]) but whether the criteria identified in the CMP applies to the licensing of IP2 and IP3. As stated, the CZMA expressly provides that license renewals are subject to consistency review and the CMP clearly announces that the State intends to participate in the review of license applications. In context therefore, the court finds that the respondent’s conclusion that the first criterion is not applicable because neither facility was certified as a “project[ ]” “deemed to [be] approved” during SEQRA’s phased implementation was not irrational (L 1976, ch 228, § 5).
The court also finds that the DOS’s determination that the second criterion, “those projects for which a final Environmental Impact Statement has been prepared prior to the effective date of the Department of State Part 600 regulations [see Appendix A, DOS Consistency Regulations, NYCRR Title 19, Part 600, (600.3 [d])],” is inapplicable to the license renewal applications is entitled to deference. Indisputably, the United States Atomic Energy Commission issued its final environmental impact statement related to the licensure of IP2 in September 1972 and it issued the EIS for the IP2 license in February 1975. Petitioners contend that this criterion must be applied literally, that is, because an EIS for each unit was prepared prior to the effective date of New York State’s Waterfront Act regulations, the petitioners need not certify that their operations are consistent with the coastal policies set forth in the CMP
The court declines to construe the CMP so literally. Indisputably, the operations at IP2 and IP3 have never been subject to review pursuant to the CZMA. In view of the statutory and regulatory provisions governing license renewals, the second criterion set forth in the CMP may have applied during the implementation of New York State’s coastal management program when the IP2 and IP3 licenses were in effect. The pending license renewal applications, however, are not exempt from consistency review. The respondent’s conclusion that the second criterion is not applicable was therefore rational.
*908 The parties’ remaining contentions have been considered and are either without merit or not necessary to resolve in light of the foregoing.
Accordingly, based on the foregoing it is ordered and adjudged that the petition is dismissed; and it is further ordered and adjudged that the request for a declaratory judgment is denied.