*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  December 11, 2014          518510
_____

In the Matter of ENTERGY
    NUCLEAR OPERATION, INC.,
    et al.,
                    Appellants,

        v                                    OPINION AND ORDER

NEW YORK STATE DEPARTMENT
    OF STATE et al.,
                    Respondents.
_____

Calendar Date:  October 6, 2014

Before:  Lahtinen, J.P., McCarthy, Egan Jr., Devine and
         Clark, JJ.

_____

        Quinn Emanuel Urquhart & Sullivan, LLP, New York City
(Kathleen M. Sullivan of counsel), Nixon Peabody, LLP, Albany
(Andrew C. Rose of counsel), Marcus V. Brown, Entergy Services,
Inc., New Orleans, Louisiana and William B. Glew Jr., Entergy
Services, Inc., White Plains, for appellants.

        Eric T. Schneiderman, Attorney General, Albany (Denise A.
Hartman of counsel), for respondents.

_____

Clark, J.

        Appeal from a judgment of the Supreme Court (Lynch, J.),
entered December 19, 2013 in Albany County, which dismissed
petitioners' application, in a combined proceeding pursuant to
CPLR article 78 and an action for declaratory judgment, to review
a determination of respondent Department of State denying
petitioners' request for a declaration that their power plants
are exempt from New York's Coastal Management Program.

Petitioners are the owners and operators of nuclear power plants in Westchester County that are known as Indian Point Nuclear Generating Plant Unit No. 2 (hereinafter Indian Point 2) and Indian Point Nuclear Generating Plant Unit No. 3 (hereinafter Indian Point 3).

> "The Atomic Energy Act of 1954 'establishes a comprehensive regulatory framework for the ongoing review of nuclear power plants located in the United States' and vests the Atomic Energy Commission, and its successor agency, the [Nuclear Regulatory Commission (hereinafter NRC)], with broad regulatory power to ensure 'that the generation and transmission of nuclear power does not unreasonably threaten the public welfare'" (Brodsky v United States Nuclear Regulatory Commn., 704 F3d 113, 116 [2d Cir 2013], quoting County of Rockland v United States Nuclear Regulatory Commn., 709 F2d 766, 769 [2d Cir 1983], cert denied 464 US 993 [1983]).

The NRC is accordingly entrusted with exclusive authority "to license and regulate the construction and regulation of nuclear power plants" (Duke Power Co. v United States Nuclear Regulatory Commn., 770 F2d 386, 388 [4th Cir 1985]; see Entergy Nuclear Vermont Yankee, LLC v Shumlin, 733 F3d 393, 409 [2d Cir 2013]). The Atomic Energy Commission issued a 40-year operating license for Indian Point 2 in 1973, and the NRC issued a similar license for Indian Point 3 in 1975 (see 42 USC § 2133 [a], [c]).

Petitioners applied to the NRC for 20-year renewals of both operating licenses in 2007. A complicating factor arose, however, in that respondent Department of State (hereinafter Department) created the New York State Coastal Management Program (hereinafter CMP) after the original operating permits had been issued. The Coastal Zone Management Act of 1972 (see 16 USC § 1451 et seq.) invited states in coastal areas to develop such plans and submit them to the United States Secretary of Commerce

for approval (see 16 USC §§ 1452 [2]; 1453 [12]; 1454, 1455). The Department was authorized to prepare the CMP in 1981 (see Executive Law § 913, as added by L 1981, ch 840) and, in 1982, the Secretary of Commerce approved the terms of the completed CMP (see 47 Fed Reg 47056-02 [1982]). As a result of that approval,

> "any applicant for a required Federal license or permit to conduct an activity . . . affecting any land or water use or natural resource of the coastal zone [in New York] shall provide in the application to the licensing or permitting agency a certification that the proposed activity complies with the enforceable policies of the [CMP] and that such activity will be conducted in a manner consistent with" the CMP (16 USC § 1456 [C] [3] [A]).

If the state objects to the applicant's certification of consistency,

> "[no] license or permit shall be granted . . . unless the Secretary [of Commerce], on his [or her] own initiative or upon appeal by the applicant, finds, after providing a reasonable opportunity for detailed comments from the Federal agency involved and from the state, that the activity is consistent with the objectives of this chapter or is otherwise necessary in the interest of national security" (16 USC § 1456 [3] [A]; see 15 CFR 930.63, 930.64).

There is no dispute that Indian Point 2 and Indian Point 3, which lie on the banks of the Hudson River, have an impact upon a coastal area that is subject to the CMP (see 16 USC § 1453 [1]; Executive Law § 911; 19 NYCRR 600.2 [h]). Therefore, petitioners would ordinarily be required to certify in their renewal application to the NRC that the renewal of the operating permits

would be consistent with the terms of the CMP. Petitioners noted, however, that the CMP exempts from consistency review

> "(1) those projects identified as grandfathered pursuant to [the] State Environmental [Q]uality Review Act at the time of its enactment in 1976; and (2) those projects for which a final [e]nvironmental [i]mpact [s]tatement has been prepared prior to the effective date of the Department of State [p]art 600 regulations [see Appendix A, DOS Consistency Regulations, NYCRR Title 19, Part 600, (600.3 [d])]."[1]

The CMP further encouraged individuals to request clarification if they were unsure as to whether a project fell within one of the exemptions and, as such, petitioners requested a declaratory ruling from the Department to assess if the renewal application was exempt from consistency review (see State Administrative Procedure Act § 204; 19 NYCRR 264.2). The Department declined to issue a declaratory ruling because the CMP is not a formal regulation, but did issue an advisory opinion finding that the renewal application was not exempt.

Petitioner then commenced this combined CPLR article 78 proceeding and declaratory judgment action seeking review of the advisory opinion and a declaration that Indian Point 2 and Indian Point 3 are not subject to the CMP. Supreme Court found that the Department's advisory opinion was reviewable, upheld it as rational and dismissed the proceeding.[2] Petitioners now appeal.

---

[1]  The bracketed provision contains a typographical error in the original text, but the parties concur that it is intended to refer to 19 NYCRR 600.3 (4), which is now codified at 19 NYCRR 600.3 (d).

[2]  For purposes of this appeal, respondents do not dispute that Supreme Court was empowered to review what the Department deemed to be an advisory opinion.

We reverse.  As respondents correctly note, "[a]n agency's interpretation of its regulations must be upheld unless the determination is irrational and unreasonable" (Matter of Marzec v DeBuono, 95 NY2d 262, 266 [2000] [internal quotation marks and citation omitted]; see CPLR 7803 [3]).  An example of such irrationality exists where "a regulatory construction . . . conflicts with the plain meaning of the promulgated language" (Matter of Visiting Nurse Serv. of N.Y. Home Care v New York State Dept. of Health, 5 NY3d 499, 506 [2005]; see Matter of County of St. Lawrence v Daines, 81 AD3d 212, 218 [2011], lv denied 17 NY3d 703 [2011]).  Petitioners argue that the Department's reading of the exemptions set forth in the CMP conflicts with the plain meaning of those terms, and we agree.

Petitioners particularly focus upon the second exemption in the CMP, which exempts from consistency review "those projects for which a final [e]nvironmental [i]mpact [s]tatement has been prepared prior to the effective date of the Department of State [p]art 600 regulations [see Appendix A, DOS Consistency Regulations, NYCRR Title 19, part 600, (600.3 [d])]."  19 NYCRR part 600 took effect in 1982.  Indian Point 2 and Indian Point 3 went into operation prior to the State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]) taking effect in 1976 and, as such, environmental impact statements were not prepared under SEQRA.  Final environmental impact statements were prepared pursuant to the National Environmental Policy Act of 1969 (42 USC § 4321 et seq. [hereinafter NEPA]), however, and statements were completed for Indian Point 2 and Indian Point 3 in 1972 and 1975, respectively.  Accordingly, applying the plain meaning of the language in the CMP, Indian Point 2 and Indian Point 3 are exempt from consistency review.

The Department nevertheless held that the exemption did not apply to Indian Point 2 and Indian Point 3 because their final environmental impact statements had not been prepared pursuant to SEQRA.  There is simply no basis in law for injecting such a requirement.  The Department noted that 19 NYCRR 600.3 (d) is cited in the exemption and refers to final environmental impact statements prepared under the SEQRA regulatory regime, but that regime permits the use of final environmental impact statements prepared under NEPA (see 6 NYCRR 617.2 [n]; 617.15 [a]; Philip

Weinberg, Practice Commentaries, McKinney's Cons Laws of NY, Book 17½, ECL 8-0111).  Indeed, SEQRA is modeled upon NEPA, and there is no indication that the final environmental impact statements prepared for Indian Point 2 and Indian Point 3 would not have complied with SEQRA (see Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 414 [1986]).

The Department further asserted that limiting the exemption to statements prepared under SEQRA was required because SEQRA and the CMP were "intertwined" with regard to coastal review.  That intertwining only came about, however, because the Legislature directed the Commissioner of Environmental Conservation to amend the SEQRA regulatory regime at the same time it authorized the Department to create the CMP (see Executive Law § 919 [3], as added by L 1981, ch 840).  To put it differently, neither SEQRA nor NEPA would have required a coordinated review of projects affecting coastal areas completed prior to 1982.  We thus agree with petitioners that the Department's reading of the second exemption offends the plain meaning of its language, is irrational and cannot be sustained.[3]

As a final matter, ECL 8-0111 (5) is not pertinent to the applicability of the CMP.  ECL 8-0111 (5) (a) (ii) provides that the requirements of SEQRA do not apply to "[a]ctions undertaken or approved prior to [1976], except . . . [i]n the case of an action where the responsible agency proposes a modification of the action and the modification may result in a significant adverse effect on the environment, in which case an environmental impact statement shall be prepared with respect to such modification."  Actions, however, are "projects or activities involving the issuance to a person of a lease, permit, license, certificate or other entitlement for use or permission to act by one or more [state or local] agencies" (ECL 8-0105 [4] [i]; see ECL 8-0105 [3]; 6 NYCRR 617.2 [b], [c]).  As discussed above, the projects at issue here are exempt from review under the CMP because final environmental impact statements were filed for both

_____

[3]  Nothing in our decision should be read as precluding the Department from amending the CMP to require consistency review in cases such as the one presently before us (see 16 USC § 1455 [e]; 15 CFR 930.51 [b]).

prior to 1982.  There is accordingly nothing further for the Department to review, with the only relevant activity being the application for renewal of the operating permits before the NRC, a federal agency.  Thus, there is no action to which the grandfathering provisions of SEQRA could apply.

In light of the foregoing, we need not reach petitioners' remaining claims.

Lahtinen, J.P., McCarthy, Egan Jr. and Devine, JJ., concur.

ORDERED that the judgment is reversed, on the law, without costs, petition granted and it is declared that Indian Point Nuclear Generating Plant Unit No. 2 and Indian Point Nuclear Generating Plant Unit No. 3 are exempt from New York's Coastal Management Program.

ENTER:

Robert D. Mayberger
Clerk of the Court