This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------

No. 179
In the Matter of Entergy Nuclear
Operations, Inc., et al.,
                Respondents,
            v.
New York State Department of
State et al.,
                Appellants.

                Barbara D. Underwood, for appellants.
                Kathleen M. Sullivan, for respondents.
                Riverkeeper, Inc. et al.; African American
Environmentalist Association et al.; Nuclear Energy Institute;
Chamber of Commerce of the United States of America et al.;
Emily Hammond; Kevin S. Parker et al., amici curiae.

ABDUS-SALAAM, J.:

        The issue presented is whether Entergy's pending

application to renew its federal operating licenses for the

Indian Point nuclear reactors on the Hudson River in Westchester

County, for an additional 20 years, is subject to review by the

-1-

New York State Department of State for consistency with the policies of New York's Coastal Management Program (CMP).  The Department of State, interpreting the CMP, which it authored, concluded that the renewal application did not fit within the CMP's grandfather exemptions and that Entergy's application is therefore subject to review.  An agency's interpretation of its own plan or regulation "is deferentially reviewed by the courts to determine whether there is a rational basis for the decision and, if so, [the agency's] conclusion must be upheld" (Matter of Terrace Court, LLC v NYS DHCR, 18 NY3d 446, 454 [2012]).  We conclude that the Department of State's determination is rational, and accordingly, the Appellate Division order holding that Indian Point is exempt from review should be reversed.

I.

Background

Entergy's Indian Point nuclear facility has two active nuclear reactors, Indian Point 2 and Indian Point 3.[1]  The Nuclear Regulatory Commission's (NRC) predecessor, the Atomic Energy Commission, issued 40-year operating licenses for Indian Point 2 in 1973 and Indian Point 3 in 1975, when Consolidated Edison owned all three reactors.  The agency now known as the New York Power Authority acquired the licensed and partially-completed Indian Point 3 from Consolidated Edison in 1975.  Entergy bought Indian Point 3 from the Power Authority in 2000

_____

[1]Indian Point 1 ceased generating electricity in 1974.

and acquired Indian Point 2 in 2001.  Entergy continues to operate the reactors under the original 40-year licenses in accordance with federal law (see 5 USC § 558; 10 CFR § 2.109).

Federal law limits the term of a initial operating license to a maximum of 40 years (see 42 USC § 2133 [c]).  In 1995, the NRC adopted its current "Part 54" regulations, authorizing the re-licensing of nuclear reactors for up to 20 years beyond the original term (see 10 CFR § 54.31 [b]).  A renewed operating license supersedes the original license (see 10 CFR § 54.31 [c]).  An application for a license to operate a nuclear facility requires the NRC to produce a final environmental impact statement, and an application for a re-license requires a supplemental site-specific environmental impact statement, which is in addition to the 2013 Generic Environmental Impact Statement for License Renewal of Nuclear Plants (see 10 CFR § 51.20 [b][2]; Pt 5, Subpt A, App B).[2] The applicant is required to submit an environmental report to the NRC and to identify other necessary environmental permits and approvals (10 CFR §§ 51.45, 51.53 [c]).

Congress adopted the Coastal Zone Management Act (the Act) in 1972, to encourage the states to protect their coastal resources, with an aim "to preserve, protect, develop, and where possible, to restore or enhance, the resources of the Nation's

---

[2]Reactor License Renewal http://www.nrc.gov/reactors/operating/licensing/renewal/overview.html, accessed Oct. 31, 2016.

coastal zone for this and succeeding generations" (16 USC § 1452
[1]).  The Act states that "[t]he key to more effective
protection and use of the land and water resources of the coastal
zone is to encourage the states to exercise their full authority"
over coastal lands and waters by adopting coastal management
programs of their own.  It provides that a coastal state can
choose to draft a CMP, which is a "comprehensive statement . . .
setting forth objectives, policies, and standards to guide public
and private uses of lands and waters in the coastal zone" (16 USC
§ 1453 [12]).  Upon completion, the state then submits the CMP to
the United States Secretary of Commerce for authorization (see 16
USC § 1454).

The Act mandates that once the Secretary has approved a
state's management program,

> "any applicant for a required [f]ederal
> license . . . affecting any land or water use
> or natural resource of the coastal zone of
> that state shall provide in the application
> to the licensing . . . agency a certification
> that the proposed activity complies with the
> enforceable policies of the state's approved
> program and that such activity will be
> conducted in a manner consistent with the
> program" (16 USC § 1456 [c][3][A]).

Within six months of submission, the affected state must concur
or object to the certification.  Further, the Act provides that
"[n]o license or permit shall be granted by the [relevant]
federal agency" until the state or its designated agency has
concurred with the certification, is deemed to have done so, or
the Secretary overrides the State's objection (16 USC § 1456

[c][3][A]).  Federal regulations under the Act require
consistency review of renewal applications for federal licenses
that affect any coastal use or resource where the activities were
not previously reviewed by the designated state agency, where the
activities are subject to new management changes, or where the
renewal will cause an effect substantially different from those
the state agency originally reviewed (see 15 CFR §§ 930.51[b][1]-
[3]).  The Act does not grant any exemptions or exceptions to the
consistency requirement.

In 1982, New York adopted a CMP.[3]  The Department of
State took the lead in preparing the CMP and administers it.  The
United States Secretary of Commerce approved the CMP and it
became effective on September 30, 1982 (see 47 Fed Reg 47056-02
[1982]). The CMP sets forth 44 enforceable statewide policies
relating to coastal activities against which federal license
renewals and other federal actions affecting coastal resources
must be assessed.  State actions are also subject to review, but
that review is not conducted by the Department of State but by
the state agency proposing to take the action in accordance with
the regulations promulgated by the Department (see 19 NYCRR §§
600.21. 600.3, 600.4; Executive Law § 919).  The CMP's statewide
policies include protecting fish and wildlife resources;

---

[3]New York State Coastal Management Program and Final
Environmental Impact Statement
http://www.dos.ny.gov/opd/programs/pdfs/NY_CMP.pdf, accessed Oct.
25, 2016.

preventing or minimizing damage from flooding or erosion; meeting public energy needs in an environmentally safe manner; and controlling air and water pollution.

New York has designated its Department of State to review federal agency actions to ensure consistency with the 44 coastal policies set forth in the CMP.  The Department conducts a federal consistency review of a proposed federal license application pursuant to the federally approved CMP (see 15 CFR § 930.11 [h]).  The CMP lists the issuance of an operating license for a nuclear facility as a reviewable activity that requires the applicant to submit a federal consistency certification to the Department.  This requirement also expressly applies to renewals of federal licenses.

Certain projects are exempt from the CMP's consistency requirement:

> "The projects which meet one of the following two criteria have been determined to [b]e projects for which a substantial amount of time, money and effort have been expended, and will not be subject to New York State's [CMP] and therefore will not be subject to review pursuant to the Federal consistency procedures of the Federal Zone Management Act of 1972, as amended: (1) those projects identified as grandfathered pursuant to [the] State Environmental Quality Review Act (SEQRA) at the time of its enactment in 1976; and (2) those projects for which a final Environmental Impact Statement has been prepared prior to the effective date of the Department of State Part 600 regulations [see Appendix A, DOS Consistency Regulations, NYCRR Title 19, Part 600, 6600.3 (4)]. If an applicant needs assistance to determine if its proposed action meets one of these two

criteria, the applicant should contact the
Department of State" (CMP, Section 9).[4]

The license for Indian Point 2 expired in September 2013 and the

license for Indian Point 3 expired in December 2015.  In 2007,

Entergy applied to the NRC for a 20-year renewal of both

operating licenses, and initially took the position with the NRC

that its application was subject to the Department of State's

federal consistency review under the CMP.  However, in 2012,

Entergy changed its position and sought a ruling from the NRC

that its re-licensing application was not subject to the

Department's review for consistency with the CMP.  The State of

New York opposed Entergy's request and cross-moved for a

declaratory ruling that consistency review was required.[5]  The

NRC staff recommended that Entergy's motion be denied because

consistency review issues should be resolved by the Department of

State in the first instance. On June 12, 2013, the NRC's Atomic

Safety and Licensing Board ruled that Entergy's motion and New

York's cross-motion were premature because the New York

_____

[4]As noted by the Appellate Division, the provision contains
a typographical error in the original text, and the parties
concur that the reference to section 6600.3 (4) is intended to
refer to 19 NYCRR 600.3 (4), which is now codified at 19 NYCRR §
600.3 (d).

[5]See State of New York Response to Entergy's Request to
The Atomic Safety and Licensing Board for a Declaratory Order
Concerning Coastal Zone Management Act Issues and Cross-motion
for Declaratory Order
http://pbadupws.nrc.gov/docs/ML1309/ML13095A481.pdf, accessed
Oct. 25, 2016.

Department of State and the NRC staff had not yet consulted.[6]

Entergy subsequently sought a declaratory ruling from the Department of State as to whether its license renewal application was exempt from the CMP's consistency requirement. It argued that the license renewals were not subject to consistency review because, with respect to the first exemption, Indian Point 2 and 3 were grandfathered under SEQRA (see ECL art 8; ECL § 8-0111[5][a]) at the time of its enactment in 1976, and with respect to the second exemption, the facilities' final environmental impact statements were adopted before the effective date of the Department of State regulations referenced in that exemption.

The Department of State determined that Entergy's application to extend its operating licenses for 20 years was not exempt from consistency review under the CMP. Entergy then commenced this hybrid CPLR article 78 proceeding/declaratory judgment action seeking to annul the Department's determination and requesting a declaratory judgment that the Indian Point nuclear reactors are not subject to the CMP. Supreme Court, among other things, upheld as rational the Department's determination that neither exemption in the CMP applied, and dismissed the proceeding (42 Misc 3d 897 [2013][Sup Ct, Albany

_____

   [6]See In the Matter of Entergy Nuclear Operations, Inc. (Indian Point Nuclear Generating Units 2 and 3) http://pbadupws.nrc.gov/docs/ML1316/ML13163A233.pdf. accessed Oct. 25, 2016.

County]).  The Appellate Division reversed, holding that Indian

Point fit within the second of the two exemptions listed in the

CMP (125 AD3d 21 [3d Dept 2014]). The Appellate Division did not

address whether Indian Point had also met the criteria of the

first listed exemption.  We granted the Department of State

appellants' motion for leave to appeal (25 NY3d 908 [2015]).[7]

## II.

### The Exemptions

In considering the Department of State's interpretation

of the exemptions set forth in the CMP, we are mindful of well-

established principles that we recently reiterated and applied in

Matter of Natural Resources Defense Council, Inc. v New York

State Dept. of Envtl. Conservation (25 NY3d 373 [2015]). "[T]he

construction given statutes and regulations by the agency

responsible for their administration, if not irrational or

unreasonable, should be upheld" and "this Court treads gently in

second-guessing the experience and expertise of state agencies

charged with administering statutes and regulations" (id. at 397

[internal citations and quotation marks omitted]).  While the CMP

is not a statute or regulation, it is a program authored and

administered by the Department of State, and approved by the

United States Secretary of Commerce, that sets forth enforceable

_____

[7]By determination dated November 6, 2015, the Department of
State completed its consistency review and objected to Entergy's
certification of consistency with the CMP. That determination is
not before us.

statewide policies.  As such, the Department's interpretation of that program is entitled to deference.

Regarding the first exemption, for "those projects identified as grandfathered pursuant to State Environmental Quality Review Act [SEQRA] at the time of its enactment in 1976," Entergy contended before the Department of State that Indian Point 2 and 3 were identified as grandfathered pursuant to SEQRA at the time of its enactment.  In response, the Department reasoned that the exemption was not automatic, that the relevant agency had to expressly identify the specific project as being exempt from SEQRA, and that the exemption from consistency was not coextensive with the SEQRA grandfathering provision.  It looked to the "grandfathered projects lists," established pursuant to SEQRA, in which each state agency provided "the director of the budget [with] a list of projects such agency deem[ed] to have been approved" for the purposes of exempting those projects from SEQRA, even though the project was approved prior to SEQRA's effective date (see L 1976, ch 228, § 5). Indian Point 2 was never on such a list.  Thus, the Department concluded that it did not qualify for the first exemption.  Regarding Indian Point 3, the Department noted that, in 1978, the New York Power Authority had included Indian Point 3 on such a list. Nevertheless, the Department concluded that this listing did not exempt the current re-licensing application as the 1978 listing was limited to construction of certain facilities and acquisition

of certain real property and easements, none of which referred to the operation of Indian Point 3.

Supreme Court correctly determined that the Department of State's interpretation of the first exemption is rational and should be upheld. The Department takes the position that the phrase "identified as grandfathered" must have some meaning beyond simply referencing SEQRA, or the exemption would have just said "grandfathered under SEQRA." The word "identified" is reasonably interpreted by the Department as implying an affirmative step, such as the placing on a list. Furthermore, the CMP exemption refers to SEQRA legislation that was enacted in 1976, and as noted by the Department, the 1976 SEQRA legislation specifically directed state agencies to create a list of projects deemed approved and not subject to SEQRA (see L 1976, ch 228, § 5), whereas the more general grandfathering provision that Entergy would have us apply was adopted in the original SEQRA legislation in 1975 (see L 1975, ch 621). Thus, the Department of State's interpretation of the first exemption -- unlike Entergy's -- gives effect to the plain language of the exemption, and we uphold the Department's conclusion that the first exemption is inapplicable to Indian Point.

The second exemption applies to "those projects for which a final environmental impact statement has been prepared prior to the effective date of the Department of State part 600 regulations," with a reference to Part 600 and Part 600.3(d).

The Department determined that this exemption must be understood as exempting projects for which a SEQRA environmental impact statement had been prepared, and projects which pre-existed, but would have otherwise been subject to, the part 600 regulations on their effective date.  Context is important when considering this exemption.  The Part 600 regulations referenced in the bracketed language of the second exemption relate only to state agencies' consistency review of their own actions and apply only to actions undertaken by state agencies.  Thus, because the licensing of Indian Point did not involve a state agency reviewing its own actions, the Department of State rationally concluded that this exemption does not apply.

Additionally, the Department reasoned that the second CMP exemption directly references, and must be read in the context of 19 NYCRR § 600.3 (4), which expressly references final environmental impact statements prepared pursuant to SEQRA.  The Department explains that when it created the exemption, it was solving a transition problem.  State actions are subject to review for consistency with the CMP, but that review -- known as "state consistency review" -- is conducted not by the Department of State but by the state agency proposing to take the action, in accordance with regulations promulgated by the Department.  The exemption ensured that projects on which *state agencies* had invested time, effort, and resources in the preparation of a state environmental impact statement would not thereafter be

required to undergo a consistency review.  Stated differently, it exempted from consistency review only projects that had been subject to review under SEQRA but had not been subject to review for consistency with the state's coastal policies because the Part 600 regulations had not taken effect.  There is no exemption for projects subject to federal environmental impact statements. Indeed, the plain language of the exemption implies that the reason for the second exemption was that the Part 600 regulations were not yet available for use.

In light of this language, it was rational for the Department of State to reject Entergy's argument that final environmental impact statements pursuant to the National Environmental Policy Act (NEPA) would satisfy this exemption, and that statements prepared under SEQRA are not required.  In this appeal, Entergy, citing 6 NYCRR part 617, points out that SEQRA permits the use of final environmental impact statements prepared under NEPA.  However, the Department of State rationally concluded that a federal environmental impact statement issued under NEPA before 1976 is not contemplated by the second exemption because the purpose of the exemption was to ensure that projects on which state agencies had invested time, effort, and resources in the preparation of a state environmental impact statement would not thereafter be required to undergo a consistency review.[8]

---

[8]It is also worth noting that a federal environmental impact statement does not necessarily or automatically satisfy SEQRA, as

The Appellate Division rejected as irrational the
Department of State's position that the final environmental
impact statements must have been prepared pursuant to SEQRA.  The
court was persuaded by Entergy's argument that SEQRA permits the
use of final environmental impact statements prepared under NEPA
and that there is no indication that the final environmental
impact statements prepared for Indian Point 2 and 3 would not
have complied with SEQRA.  But the fact that SEQRA permits the
use of a statement prepared under NEPA misses the point.  The
Department's interpretation is rational given the references to
the Part 600 regulations in the bracketed language of the second
exemption and the explained purpose of the exemption; those
regulations relate only to state agencies' review of their own
actions and apply only to actions undertaken by State agencies.
In other words, it is the context of Part 600, and not the
definition of an environmental impact statement in Part 617, that
matters.  When considered in context, the language of the
exemption is tied to the Department's intent in drafting the
exemption.

Entergy also argues that, if the second exemption is
interpreted as the Department of State contends, then the
exemption never applied to anything, and is essentially a null
set.  However, the exemption did apply to something, but it only

---

the regulation obviates the need for a SEQRA environmental impact
statement only insofar as a federal environmental impact
statement "is sufficient to make findings" under the SEQRA
regulations (6 NYCRR § 617.15).

applied to projects by state agencies that were in progress as of the effective date of the CMP regulations and that, without the exemption, would have been subject to CMP review.[9]

Finally, aside from Department of State's interpretation of the specific language of the exemptions, it is plain that these narrow exemptions for projects that had final environmental impact statements completed prior to the adoption of the CMP do not apply to re-licensing.  Entergy's current application for a license to operate the Indian Point nuclear reactors for an additional 20 years is a new federal action, involving a new project, with different impacts and concerns than were present when the initial environmental impact statements were issued over 40 years ago.  Thus, just as renewal of a license to operate a nuclear power plant triggers the requirement that the NRC produce a supplemental environmental impact statement (see 10 CFR § 51.20), both the Coastal Zone Management Act and the CMP require consistency review for re-licensing of nuclear facilities.[10]  The Department's position that the Indian Point reactors are not forever exempt from consistency review

_____

[9]The Department has informed this Court that in September 2016, it submitted to the National Oceanic Atmosphere Administration's Office of Ocean and Coastal Resources Management a routine program change to the CMP that would eliminate certain provisions that the Department has concluded are obsolete, including the exemptions at issue in this appeal.

[10]As noted by the Department, it has previously conducted federal consistency reviews of NRC license renewal applications for three other aged nuclear power plants located in New York -- the James A. Patrick power plant, the R.E. Ginna nuclear plant, and the Nine Mile Point Unit 1 plant.

under the CMP, is reasonable.

In sum, the Department of State's interpretation of the exemptions in the Coastal Management Program, and its conclusion that Entergy's application to re-license the nuclear reactors at Indian Point is subject to consistency review are rational, and must be sustained.  Accordingly, the Appellate Division order should be reversed, with costs, the petition denied, and judgment granted in favor of the Department of State appellants in accordance with this opinion.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Order reversed, with costs, petition denied, and judgment granted in favor of appellants in accordance with the opinion herein. Opinion by Judge Abdus-Salaam.  Chief Judge DiFiore and Judges Pigott, Rivera, Stein, Fahey and Garcia concur.


Decided November 21, 2016