OPINION OF THE COURT
Meyer, J.
Under section 204 of the State Administrative Procedure Act the Department of Environmental Conservation (DEC) had authority to issue a declaratory ruling concerning whether the Prattsville Pumped Storage Project (Project) requires certification under section 401 of the Federal Water Pollution Control Act of 1972, as amended by the Clean Water Act of 1977 (US Code, tit 33, § 1341), or a State Pollutant Discharge Elimination System (SPDES) permit under ECL 17-0803, even though the facts upon which DEC was requested to rule were not established by evidence or conceded by other interested parties who received notice of the request for a ruling. Moreover, its doing so at the request of a petitioner other than the Power Authority of the State of New York (PASNY) was not precluded by a memorandum agreement between PASNY and DEC pursuant to which PASNY withdrew its application to DEC for section 401 certification pending hearings to be held by the Federal Emergency Regulatory Commission (FERC) on PASNY’s application to it for a Federal license to construct the Project. The order of the Appellate Division should, therefore, be reversed and the matter remitted to it for further proceedings.
I
The Project as proposed by PASNY would cause water to be pumped from the Schoharie Reservoir to a newly constructed reservoir at a higher elevation. By releasing water from the upper reservoir at times of peak demand for electricity and passing it through turbines, PASNY would *431 generate needed additional power. After passing through the turbines the water would be returned via a tailrace to the Schoharie Reservoir. Water from Schoharie flows through the Shandaken Tunnel into Esopus Creek. The Project has aroused concern about its effect upon the environment and economy of the Catskill region, including whether the water quality of Schoharie Reservoir and Esopus Creek and the fisheries of the area would be adversely affected by increased turbidity and temperature resulting from it.
On May 26, 1977, PASNY applied for a Federal license for the project. Under section 401 of the Clean Water Act a license may not issue if the proposed facility would result in a “discharge into the navigable waters” unless the State in which the discharge originates certifies (or waives certification) that the facility will comply with sections 301, 302, 303, 306 and 307 of the Clean Water Act (US Code, tit 33, §§ 1311, 1312, 1313, 1316, 1317). On May 27, 1977, PASNY applied to DEC for section 401 certification.
The certification request was, however, withdrawn by PASNY after the execution by PASNY and DEC on May 22, 1978 of a memorandum of understanding reciting the desirability that DEC’s consideration of it be subsequent to FERC hearings on PASNY’s Federal application “so that the Authority, the DEC and interested members of the public, including interveners in the FERC proceeding on the Authority’s application, may avoid unnecessary duplication of effort, expense and inconvenience”.
In April, 1980, the Catskill Center for Conservation and Development, Inc., and three other groups which had intervened in the FERC licensing proceeding (Catskill Center) petitioned DEC for a declaratory ruling. The petition, which posed seven questions, in essence sought declaratory rulings (1) that the Project would entail a “discharge into the navigable waters” governed by the Clean Water Act, (2) that it would entail a discharge of “pollutants” governed by ECL title 8, requiring a SPDES permit pursuant to ECL 17-0803, and (3) that neither the section 401 certification nor the SPDES permit would be issued if the DEC criteria pertaining to water quality (6 NYCRR part 701) or thermal discharges (6 NYCRR part 704) would be *432 violated by the effects of the Project upon the Schoharie Reservoir or Esopus Creek.
The Catskill Center’s petition stated that a declaratory ruling was required because the questions were unsettled, answers to them were necessary in order to prepare for the FERC proceeding, and a declaratory ruling would permit an expeditious challenge to an adverse ruling and thus prevent costly delay in commencement of the Project. In response PASNY filed extensive comments, arguing that no declaratory ruling should issue in view of the pendency of the FERC proceeding and the section 401 application.
DEC issued a declaratory ruling, which assumed that the facts stated in the petition were accurate and declared that the Project would require both a section 401 certification and an SPDES permit and that satisfaction of the water quality and thermal discharge criteria in 6 NYCRR parts 701 and 704 was required. It noted, however, that under 6 NYCRR 704.4 modification of the applicable criteria was possible.
PASNY then instituted the instant article 78 proceeding to annul DEC’s declaratory ruling. Special Term dismissed the petition, finding that the declaratory ruling was not irrational, unreasonable, or arbitrary and capricious. The Appellate Division, Third Department, however, reversed that judgment and annulled the ruling. It held that under section 204 of the State Administrative Procedure Act and 6 NYCRR part 619 the DEC is empowered to issue declaratory rulings “only if they are based upon the actual facts, established or conceded, of a genuine question, dispute or controversy” (86 AD2d 57, 60). Consequently, it held, DEC had abused its discretion and exceeded its jurisdiction and power by basing its declaratory ruling upon assumed facts. Additionally, it held that by issuing the declaratory ruling DEC violated its memorandum of agreement with PASNY.
On April 9, 1982, the day after the Appellate Division reversed as to the declaratory ruling, DEC denied section 401 certification and an SPDES permit. Noting the Appellate Division’s ruling, DEC stated that the absence of established facts was no longer a problem, FERC and DEC hearings which established the facts having been held *433 after the DEC declaratory ruling. That denial is the subject of a separate article 78 proceeding instituted by PASNY.
Catskill Center appealed as of right the Appellate Division’s order annulling the declaratory ruling. In view of DEC’s April 9, 1982 denial of certification, PASNY moved to dismiss the appeal on the grounds of mootness. We denied that motion (57 NY2d 806; see Matter of Lutwin v Alleyne, 58 NY2d 889; People v Fuller, 57 NY2d 152,156, n 2). On the merits PASNY argues DEC is without authority to issue a declaratory ruling on assumed facts and specifically without authority to issue a ruling concerning section 401 certification because section 401 is a Federal statute not enforceable by DEC. It argues also that absent its agreement to the assumed facts the issuance of a declaratory ruling on facts assumed by DEC and Catskill Center but not by it violates its right to due process. Neither of the latter two arguments was made below, however. We, therefore, consider only (1) whether the ruling was authorized under section 204 of the State Administrative Procedure Act and the implementing DEC regulations and (2) whether DEC’s exercise of its power under section 204 was foreclosed by the memorandum of understanding or was an abuse of discretion because based on assumed facts. We now reverse.
II
Neither the statute nor the regulations proscribe issuance of a declaratory ruling on the basis of assumed facts. Section 204 provides in pertinent part: “On petition of any person, any agency may issue a declaratory ruling with respect to the applicability to any person, property, or state of facts of any rule or statute enforceable by it. Each agency shall prescribe by rule the form for such petitions and the procedure for their submission, consideration and disposition. A declaratory ruling shall be binding upon the agency unless it is altered or set aside by a court. The agency may not retroactively change a valid declaratory ruling, but nothing in this section shall prevent an agency from prospectively changing any declaratory ruling.” Notably absent from that language is any limitation to agreed or proved facts or “genuine” questions, disputes or contro *434 versies. In this respect the section differs markedly from CPLR 3001, pertaining to declaratory judgments, which requires “a justiciable controversy.” Under section 204, the only limitations upon the authority of an agency to issue a declaratory ruling are the discretion of the agency to withhold a ruling, the power of the agency to regulate the procedure governing petitions seeking a ruling, the power of a court to alter a ruling or set it aside, and the power of the agency to change the ruling prospectively. Within these limitations, the statute permits rulings on any state of facts described by a petition. Because there is no requirement that the agency determine the accuracy of the facts as stated in the petition, it follows that an agency may in the exercise of its discretion issue a declaratory ruling based upon an assumed state of facts (cf. City of Des Moines v Public Employment Relations Bd., 275 NW2d 753 [Iowa]). As with any factually based ruling, however, the binding effect of the ruling will be limited by its assumed fact predicate.
The regulations as to declaratory rulings issued by DEC (6 NYCRR part 619) do not limit its authority to issue such rulings either. Subdivision (a) of section 619.1 of the regulation simply restates the first sentence of section 204 of the State Administrative Procedure Act, and while subdivision (b) requires “a full and carefully detailed description of all relevant facts and circumstances” and indicates that if the petition does not contain sufficient data on which to base a declaratory ruling DEC will ask for more, neither provision in any way precludes a ruling based upon assumed facts. Indeed, the absence of any provision in the regulations for fact finding and the requirement of section 619.2 that the requested ruling be issued within 30 days of DEC’s receipt of the completed petition clearly indicate the expectation that a declaratory ruling will be based on the facts developed by the petition and comments and set forth in the ruling as its assumed basis.
III
Nor can it be said that the ruling issued by DEC violated the memorandum of understanding between PASNY and DEC or because based on assumed facts involved an abuse of discretion. That PASNY and DEC deemed it desirable *435 that PASNY’s section 401 certification application be considered after the FERC hearings had been held could not deprive Catskill Center of the right to request a declaratory ruling accorded it by section 204 of the State Administrative Procedure Act, particularly since the center’s petition was not addressed to the merits of the section 401 application. And it was well within the discretion of DEC to issue the ruling on the assumed facts presented. The answers to the questions posed by the center’s request — which sought construction of unclear terms, such as “discharge”, “thermal discharge”, “navigable waters”, “pollutant”, as applied to the discharge of warm water from the upper reservoir into the cool water of the Schoharie Reservoir and of water from the Shandaken Tunnel into Esopus Creek — were involved in both the FERC proceedings and the section 401 application and, therefore, were important in relation to the center’s preparation for the proceedings to follow.
Because the Appellate Division held that the DEC did not have jurisdiction to rule upon assumed facts, it did not reach the merits as to DEC’s declaratory ruling on the facts and in relation to the statutes involved. The matter should, therefore, be remitted to the Appellate Division for its consideration of the merits and of the effect of DEC’s April 9, 1982 ruling on the issues presented.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to the Appellate Division, Third Department, for further proceedings in accordance with this opinion.
Chief Judge Cooke and Judges Jasen, Jones, Fuchs-berg and Simons concur; Judge Wachtler taking no part.
Order reversed, etc.