#27463-rev & rem-SLZ

**2016 S.D. 21**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

IN RE: PETITION FOR
DECLARATORY RULING
RE: SDCL 62-1-1(6)

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE MARK BARNETT
Judge

\* \* \* \*

JAMES D. LEACH
Rapid City, South Dakota

Attorney for petitioner
and appellant James D. Leach.


NAOMI R. CROMWELL of
Tieszen Law Office, LLC
Pierre, South Dakota

Attorneys for appellee
Associated School Boards of
South Dakota.


MICHAEL S. MCKNIGHT
LAURA K. HENSLEY of
Boyce Law Firm, LLP
Sioux Falls, South Dakota

Attorneys for appellees First
Dakota Indemnity and Dakota
Truck Underwriters.

\* \* \* \*

CONSIDERED ON BRIEFS
ON NOVEMBER 30, 2015

OPINION FILED **03/09/16**

#27463

ZINTER, Justice

[¶1.]    Attorney James Leach petitioned the Department of Labor for a declaratory ruling regarding the application of a statute. The statute governs the "earnings" used to calculate the "average weekly wage" in workers' compensation cases. Leach contended that discretionary bonuses should be included in the calculation. The Department ruled that only non-discretionary bonuses should be included, and Leach appealed to circuit court. The court, *sua sponte*, dismissed the appeal because it concluded that the Department lacked jurisdiction to issue such rulings. Leach now appeals to this Court. We reverse and remand to consider the appeal on the merits.

### Facts and Procedural History

[¶2.]    James Leach is a South Dakota attorney who, among other things, represents clients in workers' compensation cases. Settlement agreements in those cases must be approved by the Department. Leach disagrees with the Department's interpretation of a statute under which the Department excludes discretionary bonuses from the "earnings" used to calculate an injured worker's "average weekly wage."[1] However, Leach has been unable to challenge the Department's interpretation in actual cases because employers moot the issue by stipulating to include discretionary bonuses in the calculation.[2] Because this controversy is recurring but evading judicial review, Leach petitioned the Department for a

---

1.    The issue involves the definition of "earnings" in SDCL 62-1-1(6). SDCL 62-1-1 defines terms used throughout the title on workers' compensation.

2.    The record suggests that the exclusion of discretionary bonuses may often result in only a minor difference in benefits.

-1-

declaratory ruling on the proper method of calculating average weekly wages under the governing statute.

[¶3.] The Department accepted the petition and gave public notice of a hearing to consider the question. Appellees, Associated School Boards of South Dakota Workers' Compensation Trust Fund and First Dakota Indemnity and Dakota Truck Underwriters appeared in opposition to Leach's interpretation of the statute.[3] At the hearing, Leach presented argument supporting the inclusion of discretionary bonuses in the calculation. Appellees argued against the inclusion. The Department received evidence in the form of an affidavit from James Marsh, the Director of the Division of Labor and Management within the Department of Labor. Marsh indicated that a Department policy (based on an interpretation of the statute) required employers and insurers to exclude discretionary bonuses from the calculation. Marsh also indicated that the Department would not approve benefits unless the employer followed its policy. Thus, the wage calculation issue arises every time an injured worker, who has received a timely discretionary bonus, receives disability benefits.

[¶4.] Following the hearing, the Department issued a declaratory ruling that discretionary bonuses may not be included in the calculation. On appeal, the circuit court, *sua sponte*, dismissed the appeal for lack of jurisdiction. The court ruled that, in the absence of an actual case, the Department was without subject matter jurisdiction to issue declaratory rulings. The court further concluded that because the Department had no jurisdiction, the court had no jurisdiction to

---

3.     Insurance Benefits Inc. also appeared.

consider the appeal. Nevertheless, the court vacated the declaratory ruling in addition to dismissing the appeal. Leach now appeals to this Court, raising the question whether the Department had subject matter jurisdiction to issue the declaratory ruling.

## *Decision*

[¶5.] This case was resolved below by the circuit court's determination that the Department had no jurisdiction to entertain the declaratory ruling, and therefore, the circuit court had no jurisdiction to entertain the appeal. If there was no jurisdiction in the tribunals below, there is likely no jurisdiction to consider this appeal. Therefore, we must first determine the jurisdiction of all three tribunals. *See Sioux City Boat Club v. Mulhall*, 79 S.D. 668, 672, 117 N.W.2d 92, 94 (1962) ("Where the want of jurisdiction appears on the face of the record or from a geographical or other fact of which this [C]ourt may take judicial notice, it becomes the duty of this [C]ourt to determine whether it has jurisdiction as a condition precedent to its right to decide the issues involved.").

[¶6.] The South Dakota Constitution delegates to the Legislature the authority to determine this Court's and the circuit court's appellate jurisdiction. "The Supreme Court shall have such appellate jurisdiction as may be provided by the Legislature . . . . The circuit courts have such appellate jurisdiction as may be provided by law." S.D. Const. art. V, § 5. In 1966, the Legislature enacted three jurisdictional statutes pertaining to proceedings under SDCL chapter 1-26, the Administrative Procedure Act (APA). One governs jurisdiction of agencies to issue declaratory rulings, one governs jurisdiction of the circuit courts to consider appeals

of agency decisions, and one governs this Court's jurisdiction to consider appeals from the circuit courts on agency determinations. *See* 1966 S.D. Sess. Laws ch. 159, §§ 8, 15, 16, which are codified at SDCL 1-26-15, SDCL 1-26-30, and SDCL 1-26-37 respectively. Thus, the jurisdictional questions in this case are matters of statutory interpretation, a matter we review de novo. *See Wheeler v. Cinna Bakers, LLC*, 2015 S.D. 25, ¶ 4, 864 N.W.2d 17, 19.

*Jurisdiction of Agencies to Issue Declaratory Rulings*

[¶7.] The APA contains two statutes authorizing declaratory rulings. SDCL 1-26-15 authorizes declaratory rulings by agencies on statutes, rules, and agency orders. And SDCL 1-26-14 authorizes declaratory rulings by circuit courts on agency rules. Both provisions were taken almost verbatim from the Revised Model State Administrative Procedure Act of 1961 (MSAPA).[4] *See* Revised Model State Admin. Procedure Act §§ 7-8 (Unif. Law Comm'n 1961).

[¶8.] A comparison of the two statutes reveals a clear difference in the standing required for persons requesting declaratory rulings from administrative agencies and declaratory rulings from courts. To request a declaratory ruling from a court, SDCL 1-26-14 requires an actual case or controversy. The plaintiff must allege that the administrative "rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff." *Id.* In contrast, the Legislature excluded this actual case or controversy language from the statute authorizing declaratory rulings by agencies. SDCL 1-26-

---

4.     SDCL 1-26-14 is nearly identical to MSAPA § 7. SDCL 1-26-15 is nearly identical to MSAPA § 8. The second and fourth sentences of SDCL 1-26-15 were added by the Legislature.

15 requires agencies to adopt rules permitting anyone other than penitentiary inmates to request "declaratory rulings as to the applicability of any statutory provision or of any rule or order of the agency."[5]  In accordance with this statute, the Department adopted a rule permitting the filing of petitions requesting "a declaratory ruling concerning the applicability of a statutory provision or of a rule or order made by the department."  ARSD 47:01:01:04.[6]  And like its authorizing statute, the rule does not contain an actual case or controversy requirement.  On the contrary, instead of requiring an actual case or controversy, the rule permits petitions to merely "contain all the pertinent facts necessary to inform the secretary

---

5.      Numerous State agencies have adopted rules to comply with this statute. The requirements for petitioners vary.  Some rules require that the petition must ask for a ruling as to the applicability of the statute or rule to the petitioner.  *See* ARSD 17:10:03:01 (Department of Corrections); ARSD 20:04:01:07 (Commission on Gaming); ARSD 20:06:32:01 (Division of Insurance); ARSD 20:07:02:01 (State Banking Commission); ARSD 20:10:01:34 (Public Utilities Commission); and ARSD 20:48:09:01 (Board of Nursing).  The Department of Labor and many other agencies' rules do not include the "applicable to the petitioner" requirement.  *See* ARSD 47:01:01:04 (Department of Labor).  *See also* ARSD 20:03:01:05 (Department of Human Rights); ARSD 20:09:02:02 (S.D. Housing Development Authority); ARSD 20:18:04:01 (Gaming Commission on Deadwood Gambling); ARSD 20:39:01:07 (Board of Barber Examiners); ARSD 20:43:01:01 (Board of Dentistry); ARSD 20:78:02:01 (Board of Medical and Osteopathic Examiners); ARSD 44:62:01:01 (Department of Health); ARSD 67:11:01:01 (Department of Social Services); and ARSD 70:01:01:03 (State Transportation Commission).

6.      The rule provides in pertinent part:

> Petitions may be filed with the secretary of the Department of Labor for the purpose of requesting a declaratory ruling concerning the applicability of a statutory provision or of a rule or order made by the department.  Such petitions shall be in writing and contain all the pertinent facts necessary to inform the secretary of the nature of the rulings requested.

ARSD 47:01:01:04.

of the nature of the rulings requested." *Id.* Thus, the Department has routinely issued declaratory rulings based on hypothetical facts.[7]

[¶9.]     The underlying question, however, remains one of statute: whether SDCL 1-26-15 authorizes agencies to issue declaratory rulings absent an actual case or controversy. "When engaging in statutory interpretation, we give words their plain meaning and effect, and read statutes as a whole, as well as enactments relating to the same subject." *Citibank, N.A. v. S.D. Dep't of Revenue*, 2015 S.D. 67, ¶ 12, 868 N.W.2d 381, 387. Here, in adopting the APA, the Legislature included case or controversy language in the statute authorizing declaratory rulings by courts while simultaneously excluding that language in the statute authorizing declaratory rulings by agencies. "[E]very word excluded from a statute must be presumed to have been excluded for a purpose." *Magellan Pipeline Co. v. S.D. Dep't of Revenue & Regulation*, 2013 S.D. 68, ¶ 9, 837 N.W.2d 402, 404. Considering

---

7.     *See Declaratory Ruling re: SDCL § 62-4-5,* S.D. Dep't of Labor, Office of the Sec'y (Aug. 2, 2001) (considering a hypothetical employee's situation to determine partial disability benefits). *See also Declaratory Ruling re: SDCL § 62-7-38*, S.D. Dep't of Labor, Office of the Sec'y (July 20, 2000) (using facts that the Department was asked to assume); *Declaratory Ruling re: SDCL §§ 62-4-2, 62-4-5*, S.D. Dep't of Labor, Office of the Sec'y (July 7, 2005) (same); and *Declaratory Ruling re: SDCL 58-20-24*, S.D. Dep't of Labor, Office of the Sec'y (Nov. 25, 2009) (same).

Appellees contend that these rulings are different from this case because they had a factual basis in an existing controversy. This case is no different. The relevant facts are few, but they are identified in the petition: some employees receive discretionary bonuses prior to sustaining a workplace injury. These facts are not analytically different from the assumed or hypothetical facts in the prior declaratory rulings. Moreover, there certainly is an existing controversy. Leach claims that discretionary bonuses have been wrongfully excluded from the average weekly wage calculation in his clients' cases. Appellees claim that discretionary bonuses are excluded as a matter of law. The petition also reflects that this controversy has been recurring but evading judicial review.

these statutes together as a part of the same act, we conclude that by excluding the case or controversy language from SDCL 1-26-15, the Legislature excluded an actual case or controversy requirement in agency declaratory proceedings. Appellees' request to read an actual case or controversy requirement in SDCL 1-26-15 would require that we insert SDCL 1-26-14's case or controversy language into SDCL 1-26-15. "However, when this Court interprets legislation, it 'cannot add language that simply is not there.'" *State v. Hatchett*, 2014 S.D. 13, ¶ 14, 844 N.W.2d 610, 615 (quoting *Rowley v. S.D. Bd. of Pardons & Paroles*, 2013 S.D. 6, ¶ 12, 826 N.W.2d 360, 365). *See also Voss v. Ralston* (*In re Voss's Adoption*), 550 P.2d 481, 485 (Wyo. 1976) ("Words may not be inserted in a statutory provision under the guise of interpretation."). We further note that this difference in the statutes was not inadvertent. At the time the APA was adopted, the Legislature was clearly concerned about the scope of those who would be authorized to request declaratory rulings. Although the Legislature followed the model act in excluding the case or controversy requirement from SDCL 1-26-15, it added a non-model act restriction prohibiting penitentiary inmates from requesting those rulings.

[¶10.]     The decisions of other courts support our conclusion. In *Power Authority of State of New York v. New York State Department of Environmental Conservation*, 448 N.E.2d 436, 438-39 (N.Y. 1983), the New York Court of Appeals reversed a lower court's holding that agencies had jurisdiction to issue declaratory rulings "only if they are based upon the actual facts, established or conceded, of genuine question, dispute or controversy." The Court of Appeals held that under

statutory language like SDCL 1-26-15,[8] agency declaratory rulings may be based on "any state of facts described by a petition" including "an assumed state of facts[.]" *Id.* at 439.  Like we do today, the New York Court reasoned: "Notably absent from [New York's statutory] language is any limitation to agreed or proved facts or 'genuine' questions, disputes or controversies." *Id.*  The Court also observed that the New York administrative provision was unlike declaratory judgments actions in courts.  *Id.  See also City of Des Moines v. Pub. Emp't Relations Bd.*, 275 N.W.2d 753, 758 (Iowa 1979) (stating that Iowa's then verbatim adoption of § 8 of MSAPA "contemplates declaratory rulings by administrative agencies on purely hypothetical sets of facts . . . .  And it provides that such rulings will be the subject of judicial review.")  (citations omitted); *Matrix Funding Corp. v. Auditing Div. of Utah State Tax Comm'n*, 912 P.2d 960, 961 (Utah 1996) (holding that the "hypothetical posture of a case does not, by itself, prevent [the court] from reviewing an administrative declaratory order.").  Federal courts have also concluded that the similar unrestricted language in the Federal Administrative Procedure Act does not

---

8.	Like SDCL 1-26-15, the New York statute had no case or controversy restriction.  In relevant part, it provided:

> On petition of any person, any agency may issue a declaratory ruling with respect to the applicability to any person, property, or state of facts of any rule or statute enforceable by it.  Each agency shall prescribe by rule the form for such petitions and the procedure for their submission, consideration and disposition.

*Power Auth. of the State of N.Y.*, 448 N.E.2d at 438-39.

require an actual case or controversy for agency declaratory rulings.[9] *See Tenn. Gas Pipeline Co. v. Fed. Power Comm'n*, 606 F.2d 1373, 1380 (D.C. Cir. 1979) (concluding that agencies may issue "an advisory opinion or abstract declaration without regard to the existence of an actual controversy."); *N.C. Util. Comm'n v. Fed. Commc'n Comm'n*, 537 F.2d 787, 791, n.2 (4th Cir. 1976) (stating that federal agencies are not restricted to adjudicating only cases or controversies).

[¶11.] Appellees, however, argue that language expressing a case or controversy requirement need not be in SDCL 1-26-15 because the requirement is inherent. Appellees rely on *Boever v. South Dakota Board of Accountancy*, 526 N.W.2d 747, 750 (S.D. 1995), in which we concluded that an action for declaratory judgment was not ripe because it was based on future injuries that would not likely occur. *Boever*, however, does not apply because it involved a request for declaratory relief in a *court* under South Dakota's Uniform Declaratory Judgment Act—SDCL chapter 21-24. *Id.* at 749-50. And that act, like SDCL 1-26-14, contains language requiring an actual case or controversy in requests for the construction of statutes.[10] Appellees' other cases suffer from the same infirmity. *See Campbell v.*

---

9.  The relevant language of the Federal Administrative Procedures Act under consideration provided: "The agency, with like effect as in the case of other orders, and in its sound discretion, may issue a declaratory order to terminate a controversy or remove uncertainty." 5 U.S.C. § 554.

10. *See* SDCL 21-24-3, which provides:

    Any person interested under a deed, will, written contract, or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain

(continued . . .)

*Fritzsche*, 78 S.D. 593, 596, 105 N.W.2d 675, 676 (1960) (holding that *courts* should not issue advisory opinions); *Steinmetz v. State, DOC Star Acad.*, 2008 S.D. 87, ¶ 17, 756 N.W.2d 392, 399 (holding that the matter was not ripe for review by a *court*); *Kneip v. Herseth*, 87 S.D. 642, 654, 214 N.W.2d 93, 100 (1974) (upholding a declaratory judgment by a *court*).[11]

[¶12.]     Appellees finally argue that our interpretation of SDCL 1-26-15 leads to an absurd result. Appellees contend that any person could demand an agency declaratory ruling on any issue no matter how speculative or remote. However, many courts conclude that administrative agencies retain discretion to deny requests for declaratory rulings.[12] Thus, agencies may not be required to rule on

---

(. . . continued)

> a declaration of rights, status, or other legal relations thereunder.

11.    Appellees' cases from other jurisdictions are also inapposite. *See People's Counsel of D.C. v. Pub. Serv. Comm'n of D.C.*, 474 A.2d 1274, 1288-89 (D.C. 1984) (involving the court's jurisdiction, not the agency's); *Baltimore City Bd. of Sch. Comm'rs v. City Neighbors Charter Sch.*, 929 A.2d 113, 136 (Md. 2007) (holding that it was not improper for an agency to issue declaratory ruling); *Health Cent. v. Comm'r of Ins.*, 393 N.W.2d 625, 631 (Mich. Ct. App. 1986); and *Thompson v. State*, 167 P.3d 867, 873-74 (Mont. 2007) (involving declaratory judgments, not declaratory rulings); *Beason v. N.C. Dep't of Sec'y of State*, 741 S.E.2d 663, 666-67 (N.C. Ct. App. 2013) (involving a statute that explicitly limited its application to aggrieved persons.)

12.    *See Yale Broad. Co. et al. v. Fed. Commc'n Comm'n*, 478 F.2d 594, 602 (D.C. Cir. 1973) (holding that the F.C.C. had discretion to refuse to issue a declaratory ruling regarding a broadcaster's license because it would be impossible for the Commission to rule on every petition that could come before it); *Citizens Against Reckless Dev. v. Zoning Bd. of Appeals of City & Cty. of Honolulu*, 159 P.3d 143, 154 (Haw. 2007) (holding that the Legislature intended agencies to have discretion regarding issuing declaratory rulings); *Iowa Ins. Inst. v. Core Grp. of Iowa Ass'n for Justice*, 867 N.W.2d 58, 68 (Iowa 2015) ("Whether or not [Petitioner] would be aggrieved or adversely affected

(continued . . .)

every conceivable question someone may have.  We leave the scope of that discretion for another day when that issue has been squarely presented.

*Jurisdiction of Circuit Courts to Hear Appeals*

[¶13.]	The circuit court's appellate jurisdiction to review agency decisions is governed by SDCL 1-26-30.  That statute authorizes appeals of agency decisions by non-aggrieved parties if the party has exhausted administrative remedies and the decision was not rendered in a contested case.  The statute provides: "A person who has exhausted all administrative remedies available within any agency *or* a party who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter." *Id.* (emphasis added).  Notably, the Legislature's 1977 amendment of this statute replaced the word "and" with the emphasized word "or." 1977 S.D. Sess. Laws ch. 13, § 12.  The now disjunctive language is a significant departure from the MSAPA, which required exhaustion of administrative remedies *and* aggrieved party status to appeal to the courts.  *See* Revised Model State Admin. Procedure Act § 15 (Unif. Law Comm'n 1961).

---

(. . . continued)

if its request for a declaratory order were denied, the commissioner could have concluded 'the importance and nature of the questions [to be] decided' would justify dispensing with a strict standing requirement." (quoting *City of Des Moines*, 275 N.W.2d at 759)); *Teleconnect Co. v. Iowa State Commerce Comm'n*, 366 N.W.2d 515, 518 (Iowa 1985) ("'Agency action' includes a declaratory ruling or a refusal to issue such a ruling."); *Md.-Nat'l Capital Park v. Anderson*, 947 A.2d 149, 160 (Md. Ct. Spec. App. 2008) ("The decision to issue a declaratory ruling is a discretionary act of the agency."); *Humane Soc'y of U.S., Inc. v. Brennan*, 63 A.D.3d 1419, 1420 (N.Y. App. Div. 2009) ("There is no requirement that the agency issue a declaratory ruling when requested and a petitioner has no rights under the statute other than a timely response by the agency[.]"); *Wis. Fertilizer Ass'n v. Karns*, 158 N.W.2d 294, 300 (Wis. 1968) (holding that an agency has discretion whether to issue a declaratory ruling).

[¶14.] Thus, under the disjunctive 1977 amendment, the Legislature authorized parties in agency proceedings to appeal to circuit court if they had either exhausted their remedies within the agency or if they were aggrieved by the agency's decision in a contested case.[13] In this case, following the declaratory

---

13. The dissent argues that the disjunctive amendment did not change the statute to permit an appeal under the "exhaustion of administrative remedies" clause of SDCL 1-26-30. The dissent relies on *Homestake Mining Co. v. Bd. of Envtl. Prot.*, 289 N.W.2d 561 (S.D. 1980) and *State v. Small*, 2003 S.D. 29, 659 N.W.2d 15. *See* dissent ¶¶ 26-27. Neither case supports the dissent. *Homestake Mining Co.* only considered whether an SDCL 1-26-30 appeal was an *additional* method for judicially challenging an agency's *adoption* of *administrative rules*. *Homestake Mining Co.*, 289 N.W.2d at 562. The Court noted the disjunctive amendment, but expressly declined to offer any opinion on it beyond the administrative rule question: "We need not decide what changes in procedure, if any, were wrought by [the disjunctive] amendment except to say we are convinced it does not contemplate *an additional procedure* for a wholesale attack on the validity of *administrative rules* through an appeal process." *Id.* (emphasis added). Today's appeal does not involve an attack on the adoption of administrative rules. And although today's case does involve the appeal of an agency "declaratory ruling," those rulings are not administrative "rules." *See* SDCL 1-26-1 (8) ("The term [rule] . . . does not include . . . [d]eclaratory rules issued pursuant to § 1-26-15[.]"). Because today's case does not involve a challenge to the validity of any "rule" in the Administrative Rules of South Dakota, *Homestake Mining Co.* does not prohibit the circuit court from exercising jurisdiction under SDCL 1-26-30.

*Small* also fails to provide any relevant limitation on circuit court appellate jurisdiction. The question on appeal to this Court in *Small* only involved the circuit court's original jurisdiction. The plaintiff had filed a "summons and complaint" in circuit court (an original action) "for declaratory judgment pursuant to SDCL 21-24-3." *Small*, 2003 S.D. 29, ¶ 8, 659 N.W.2d at 16. And, unlike SDCL 1-26-30, SDCL 21-24-3 specifically required standing and an actual case or controversy in that original proceeding. *See* SDCL 21-24-3 (limiting declaratory relief to those who "whose rights, status, or other legal relations are affected . . ."). Smalls later amended their "complaint" to request a "declaratory judgment" pursuant to SDCL 1-26-14. 2003 S.D. 29, ¶ 8, 659 N.W.2d at 16. But again, unlike SDCL 1-26-30, SDCL 1-26-14 only authorized original actions for declaratory judgment by a party who was "aggrieved." *See id.* (requiring the plaintiff to allege that the rule "interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff"). *Small* is inapplicable because it involved the

(continued . . .)

ruling, Leach had exhausted all available agency remedies.[14] Therefore, under

SDCL 1-26-30, the circuit court had jurisdiction to entertain this appeal.[15]

---

(. . . continued)
original jurisdiction of the circuit court and the statutes we construed specifically required an actual case or controversy. In the final analysis, today's appeal does not involve a circuit court's original jurisdiction or the Administrative Rules of South Dakota. Therefore, neither *Small* nor *Homestake Mining Co.* supports the dissent's remarkable proposition that SDCL 1-26-30 only provides circuit court appellate jurisdiction in cases "involving a contested case procedure." *See* dissent ¶ 26 (citing *Small* and *Homestake Mining Co.*).

14.    The dissent contends that Leach has not exhausted his administrative remedies. Dissent ¶ 29. The dissent reasons: "A remedy cannot exist in the absence of an injury. . . . Because there was no injury, there necessarily was no 'remedy' for Leach to exhaust." *Id.* This reasoning is based on the false premise that without an injury no remedy of any kind can exist. The APA dispels the dissent's premise. As we have previously held, SDCL 1-26-15 authorizes individuals to petition administrative agencies to issue declaratory rulings on the applicability of statutes *even though the petitioner can claim no injury. See supra* ¶¶ 7-10. We have also specifically stated that agency declaratory ruling proceedings are an administrative "remedy." *See Dan Nelson, Auto., Inc. v. Viken*, 2005 S.D. 109, ¶ 14, 706 N.W.2d 239, 244.

15.    The dissent contends that even if the circuit court had jurisdiction under SDCL 1-26-30, the case was properly dismissed because Leach did not have "standing" and did not present a "case or controversy." Dissent ¶¶ 30-33. All of the dissent's authorities are facially inapposite because they either involve the original jurisdiction of a circuit court or they involve an appellate statute that specifically requires standing and a case or controversy. *See State v. Kvasnicka*, 2013 S.D. 25, ¶ 23, 829 N.W.2d 123, 129 (discussing principles of mootness in a criminal case); *Boever v. S.D. Bd. of Accountancy*, 526 N.W.2d 747, 750 (S.D. 1995) (considering ripeness in an original action in circuit court); *Cable v. Union Cty. Bd. of Cty. Comm'rs*, 2009 S.D. 59, ¶ 15, 769 N.W.2d 817, 824 (involving an appeal from a county commissioner decision under a different statute that specifically required standing; i.e. "a person aggrieved"). Moreover, *Cable* is based on *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992), in which the United States Supreme Court held that in the federal courts, "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." But today's case is not governed by Article III of the United States Constitution. Indeed, although *Lujan* is

(continued . . .)

*Jurisdiction of this Court to Review a Circuit Court's Review of an Agency Decision*

[¶15.]        The last issue is whether this Court has jurisdiction to consider

Leach's appeal of the circuit court's decision.  As previously noted, the South Dakota

Constitution leaves "to the [L]egislature as a matter of substantive law to say

whether there shall be a right of appeal" to this Court.  *Piedmont Indep. Sch. Dist.*

*No. 34 of Meade Cty. v. Meade Cty. Bd. of Educ.*, 78 S.D. 384, 386, 103 N.W.2d 177,

178 (1960).  Pursuant to its constitutional authority, the Legislature enacted SDCL

1-26-37, which delineates our appellate jurisdiction to review decisions of the circuit

courts in cases decided under the APA.  The statute provides: "An aggrieved party

or the agency may obtain a review of any final judgment of the circuit court under

---

(. . . continued)

    helpful when construing statutes that specifically require an aggrieved party,
this Court has specifically rejected the dissent's argument in considering
what appeals are authorized by SDCL 1-26-30.  This Court refused to "add to
SDCL 1-26-30 the gloss of federal cases on standing" under Article III.
*Application of N. States Power Co.*, 328 N.W.2d 852, 854 (S.D. 1983).  *See also*
*ASARCO Inc. v. Kadish*, 490 U.S. 605, 617, 109 S. Ct. 2037, 2045, 104 L. Ed.
2d 696 (1989) ("We have recognized often that the constraints of Article III do
not apply to state courts, and accordingly the state courts are not bound by
the limitations of a case or controversy or other federal rules of
justiciability[.]").  We do recognize that Article V, § 5 of the South Dakota
Constitution arguably contains a "case" restriction on the "original
jurisdiction" of circuit courts.  But the appellate jurisdiction of those courts is
not so limited.  In a separate sentence, Article V, § 5 gives the Legislature
plenary authority to determine the circuit courts' appellate jurisdiction.  That
sentence provides: "The circuit courts have such appellate jurisdiction as may
be provided by law." *Id.*  In this case, the law (SDCL 1-26-15) gives agencies
authority to issue declaratory rulings in hypothetical cases.  The law (SDCL
1-26-30) further authorizes appeals from those rulings to circuit court when
the administrative proceedings have been exhausted.  This law is clear, and
our task is to simply apply the South Dakota Constitution and this statutory
language without the judicial "gloss" of the "case or controversy" limitation in
Article III of the federal Constitution.  *See Application of N. States Power Co.*,
328 N.W.2d at 854.

this chapter by appeal to the Supreme Court." SDCL 1-26-37. Unlike the statute authorizing appeals to circuit court, this statute requires that the appealing party must be "aggrieved" by the decision of the circuit court. *Id.*

[¶16.]     Aggrieved parties are those that "suffer the denial of some claim of right either of person or property . . . ." *Application of N. States Power Co.*, 328 N.W.2d at 855 (quoting *Barnum v. Ewing*, 53 S.D. 47, 53, 220 N.W. 135, 138 (S.D. 1928)). Although Leach has no claim of right to include discretionary bonuses in any actual weekly wage determination, claims of right sufficient to create standing may arise from statute. The alleged deprivation of a statutorily created right creates an injury to a party even if there would have been no judicially recognizable injury in the absence of the statute. *See Warth v. Seldin*, 422 U.S. 490, 514, 95 S. Ct. 2197, 2213, 45 L. Ed. 2d 343 (1975) ("Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute."). *See also Heffernan v. Missoula City Council,* 255 P.3d 80, 92 (Mont. 2011) ("Importantly, the legislative branch 'may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute.'" (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3, 93 S. Ct. 1146, 1149, 35 L. Ed. 2d 536 (1973))). Thus, injury and standing may be shown "solely by the invasion of a legal right" that the legislative branch created. *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 819 (8th Cir. 2015) (quoting *Hammer v. Sam's East, Inc.*, 754 F.3d 492, 498 (8th Cir. 2014).

[¶17.] The deprivation of Leach's statutory rights to a declaratory ruling and a circuit court appeal constitute an injury that provides standing and "aggrieved" party status to appeal. In *Ingalls Shipbuilding, Inc. v. Director, Office of Workers' Compensation Programs, United States Department of Labor*, 102 F.3d 1385, 1387 (5th Cir. 1996), a worker sued his employer under the Longshore and Harbor Workers' Compensation Act. As was permitted under the Act, the employer requested that the District Director of the Office of Workers' Compensation Programs (District Director) refer the workers' compensation claim to the Office of Administrative Law Judges (OALJ). *Id.* Although the District Director was mandated to transfer the case, he did not do so. *Id.* at 1387, 1389. The employee was later allowed to withdraw his claim against the Employer without prejudice. *Id.* at 1387-88. The Employer appealed the withdrawal to the Benefits Review Board. *Id.* at 1388. The Board held that the Employer was not an aggrieved party with standing to appeal because even though the District Director failed to transfer the case to the OALJ for a hearing, the Employer was not injured by the withdrawal. *Id.* The Fifth Circuit reversed, holding that the Employer was injured by the denial of its procedural right to have its claim heard by the OALJ, even though it had not yet suffered substantive injury. *Id.* at 1390. The court also held that this type of procedural, statutory injury created aggrieved party status and standing to pursue an appeal under a statute allowing an appeal to the United States Court of Appeals by a person "aggrieved." *Id.*

[¶18.] As was the case in *Ingalls*, SDCL 1-26-15 and SDCL 1-26-30 afford procedural rights. The former gave Leach the right to petition for a declaratory

ruling under hypothetical facts. The latter gave Leach the right to appeal the declaratory ruling to circuit court even though he was not personally aggrieved. Therefore, once the Department issued a declaratory ruling, Leach was "aggrieved" within the meaning of SDCL 1-26-37 by the circuit court's vacation of his declaratory ruling and dismissal his appeal. He was aggrieved by the deprivation of these statutory-procedural rights. *See Ingalls*, 102 F.3d at 1389-90. And because Leach was aggrieved, we have jurisdiction under SDCL 1-26-37 to remand this matter for a decision on the merits.

[¶19.] We do, however, point out that Leach would not have been aggrieved and we would not have had jurisdiction had the circuit court ruled (either way) on the merits. Had that occurred, Leach would have received his procedural right to a declaratory ruling and circuit court review. *Cf. Ingalls*, 102 F.3d at 1390 ("Moreover, this injury can be redressed by vacating the withdrawal approved by the District Director and allowing the OALJ to act on the motion in accordance with the adjudicative procedures that govern its proceedings."). Thus, once Leach is afforded his statutory rights by a circuit court's review on the merits, this Court will have no jurisdiction to review the circuit court's decision because Leach will have lost his "aggrieved" party status. We acknowledge what appears to be an inconsistency: declaratory rulings in hypothetical cases will be appealable to the circuit court but not this Court. This is an anomaly created by the Legislature's 1977 amendment of the APA (SDCL 1-26-30) allowing non-aggrieved parties to appeal to circuit court but not this Court. Although we question whether the Legislature intended this unusual result, the statutes are clear and therefore

resolution of that question is within the exclusive province of the Legislature. Under Article V, § 5 of the Constitution, the Legislature determines the appellate jurisdiction of the courts.

[¶20.] Under SDCL 1-26-15 and SDCL 1-26-30, the Department and the circuit court had jurisdiction to consider Leach's petition for a declaratory ruling. Because the circuit court deprived Leach of those statutory rights, he was a person "aggrieved" who was authorized to appeal to this Court under SDCL 1-26-37. We reverse and remand to the circuit court to determine the merits of the petition for declaratory ruling.

[¶21.] SEVERSON, WILBUR, and KERN, Justices, concur.

[¶22.] GILBERTSON, Chief Justice, concurs in result in part and dissents in part.

GILBERTSON, Chief Justice (concurring in result in part and dissenting in part).

[¶23.] I agree with the Court's conclusion that the Department had jurisdiction to hear Leach's petition. However, I disagree that Leach had a right to appeal the Department's ruling. Therefore, I concur in result in the Court's decision to reverse the circuit court's vacation of the Department's ruling. However, remanding to the circuit court for a determination on the merits is not authorized in this case because the circuit court does not have jurisdiction to entertain Leach's appeal. Even if the appeal was statutorily authorized, it is improper because Leach lacks judicial standing. Therefore, I would affirm the circuit court's dismissal of Leach's appeal.

[¶24.]      **1.**     ***The circuit court lacked appellate jurisdiction.***

[¶25.]      The Court and Leach assert the circuit court had jurisdiction under the first sentence of SDCL 1-26-30, which states: "A person who has exhausted all administrative remedies available within any agency or a party who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter." As the Court notes, the Legislature amended SDCL 1-26-30 in 1977, replacing *and* with *or*. 1977 S.D. Sess. Laws ch. 13, § 12. Based solely on this change in word choice, both the Court and Leach conclude that this amendment created alternate avenues for appeal.

[¶26.]      We already considered and rejected the notion that the 1977 Amendment was substantive rather than stylistic over 35 years ago in *Homestake Mining Co. v. Board of Environmental Protection*, 289 N.W.2d 561 (S.D. 1980). In that case, a mining company appeared before the State Environmental Protection Board to protest its adoption of rules changing the designation of a stream, which Homestake used for disposing of waste, to a fishery stream. *Id.* at 561-62. Homestake attempted to appeal the rule into circuit court under SDCL 1-26-30 and also filed a declaratory judgment action with the circuit court under SDCL 1-26-14. *Homestake Mining*, 289 N.W.2d at 562. In rejecting Homestake's appeal, we declined to assign any meaning to the 1977 Amendment and acknowledged that a substantive change may not have even been intended. *See id.* We held "that the 1977 legislative amendment to SDCL 1-26-30 was not intended to authorize appeals that question rules adopted by administrative agencies *in other than contested cases.*" *Id.* (emphasis added). In other words, SDCL 1-26-30 provides appellate jurisdiction to the circuit court to hear only a case "involv[ing] a contested case

procedure." *Small v. State*, 2003 S.D. 29, ¶¶ 18-19, 659 N.W.2d 15, 19 (per curiam); *Homestake Mining*, 289 N.W.2d at 562.[16] In concluding otherwise, the Court ignores our decisions in *Homestake Mining* and *Small*.

[¶27.] *Small* presents an additional analytical challenge to the Court's conclusion that the 1977 Amendment established two avenues for appeal. The Court claims that "under the disjunctive 1977 amendment, the Legislature authorized parties in agency proceedings to appeal to circuit court if they had either exhausted their remedies within the agency or if they were aggrieved by the agency's decision in a contested case." *See supra* ¶ 14. In other words, the Court argues that the aggrieved-party and remedy-exhaustion requirements are each sufficient—instead of necessary—conditions to invoke a right of appeal. However, contrary to the Court's claim, we have repeatedly held that the remedy-exhaustion requirement is a necessary condition of appeal. *Small*, 2003 S.D. 29, ¶ 16, 659 N.W.2d at 18-19 ("[N]o one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." (quoting *S.D. Bd. of Regents v. Heege*, 428 N.W.2d 535, 539 (S.D. 1988))). Consequently, subscribing to the Court's theory requires either overruling these numerous cases or explaining why the 1977 Amendment should be read as only half disjunctive (the Court offers no such explanation).

---

16. Although the present case is distinguishable from *Homestake* insofar as it presents a challenge to an agency's interpretation of a statute rather than its own rule, this distinction is not material. There is no discernable reason to conclude that the Legislature intended to deny appellate jurisdiction when an agency interprets its own rule in an uncontested case but grant jurisdiction when it instead interprets a statute.

[¶28.]     Portions of the Administrative Procedure Act (APA) and the Declaratory Judgment Act (DJA) also suggest the Legislature did not intend the 1977 Amendment to create a right to appeal in an uncontested case. When engaging in statutory construction, "the intent [of a statute] must be determined from the statute as a whole, as well as other statutes relating to the same subject." *Maynard v. Heeren*, 1997 S.D. 60, ¶ 13, 563 N.W.2d 830, 835. Because this is an uncontested case, Leach was not permitted to directly ask the circuit court to declare the meaning of *earnings*. SDCL 21-24-3. Similarly, Leach would not have been permitted to directly ask the circuit court to declare the meaning of an administrative rule. SDCL 1-26-14. By remanding this case for an appeal on the merits, then, the Court today permits Leach to do by way of appeal exactly that which he would be barred from doing directly: ask a court to substantively declare the meaning of a statute in the absence of an actual case.

[¶29.]     The requirement that a would-be appellant exhaust administrative *remedies* reinforces the conclusion that the 1977 Amendment did not establish a right to appeal in an uncontested case. A remedy cannot exist in the absence of an injury. *See Hyde v. Minn., Dak. & Pac. Ry. Co.*, 29 S.D. 220, 234, 136 N.W. 92, 97 (1912) ("There is no redress, as there is no wrong to redress . . . ."); *Black's Law Dictionary* 1485 (10th ed. 2014) (defining *remedy* as "[t]he means of enforcing a right or preventing or redressing a wrong"). In the hypothetical question Leach appealed to the circuit court, he did not claim to have been injured, nor did he seek to enforce

his rights.[17]  Because there was no injury, there necessarily was no "remedy" for

Leach to exhaust.[18]  Therefore, Leach is not "[a] person who has *exhausted* all

administrative remedies available[.]"  SDCL 1-26-30 (emphasis added).

---

17.     In his petition, Leach states: "This petition allows the Secretary to correct the erroneous rulings of the Department, so that injured workers *in the future* can receive the benefits to which they are entitled by law."  (Emphasis added.)

18.     The Court's conclusory claim that the APA dispels this "false premise" is unsupported.  *See supra* ¶ 14 n.14.  The Court first repeats its earlier holding that SDCL 1-26-15 permits an individual to petition an agency for a declaratory ruling absent an injury.  As I have already indicated, I agree that Leach was permitted to petition the Department for a declaratory ruling. However, in the absence of an injury, such is no more a "remedy" for Leach than, for example, the ability to ask for an advisory opinion from this Court is a "remedy" for the Governor.  Simply repeating that Leach has the ability to petition for a declaratory ruling absent an injury completely ignores the question whether that ability can logically be considered a remedy.  Thus, the Court's reasoning is circular—it assumes that the ability to petition for a declaratory ruling is an administrative remedy in order to conclude the same without addressing how one enforces a right that does not exist or redresses a wrong that has not occurred.

The Court's argument based on our decision in *Dan Nelson, Automotive, Inc. v. Viken*, 2005 S.D. 109, ¶ 14, 706 N.W.2d 239, 244, is similarly ineffective. The Court claims that "[w]e have . . . specifically stated that agency declaratory ruling proceedings are an administrative 'remedy.'"  In *Dan Nelson, Automotive*, the plaintiffs brought an action for declaratory judgment in the circuit court under SDCL chapter 21-24.  *Id.* ¶ 4, 706 N.W.2d at 241. As the Court correctly points out, an action for declaratory judgment "requir[es] an actual case or controversy in requests for the construction of statutes."  *See supra* ¶ 11.  Therefore, *Dan Nelson, Automotive* necessarily involved an injury.  In relying on that case, then, the Court's apparent argument is as follows: a declaratory ruling is a remedy when an injury is present; therefore, a declaratory ruling is a remedy when an injury is not present.  This non sequitur only highlights the dependency a remedy's existence has on the presence of an injury.

-22-

Consequently, the circuit court did not have appellate jurisdiction over Leach's appeal even if the Court ignores *Homestake Mining*[19] and *Small*.[20]

[¶30.] **2.** ***Leach lacked judicial standing to appeal into the courts.***

[¶31.] Even if the Court was correct in concluding the circuit court had appellate jurisdiction, Leach's appeal should have been dismissed by the circuit court because it does not present a case or controversy. "It is a fundamental principle of our jurisprudence that courts do not adjudicate issues that are not actually before them in the form of cases . . . ." *State v. Kvasnicka*, 2013 S.D. 25, ¶ 23, 829 N.W.2d 123, 129 (quoting *Moeller v. Weber*, 2004 S.D. 110, ¶ 45, 689 N.W.2d 1, 16). "Although declaratory relief is designed to determine legal

---

19. Relying solely on the definition of *rule* from SDCL 1-26-1(8)(b), the Court claims that *Homestake Mining* is inapplicable because it involved the appeal of a *rule* instead of a *ruling*. *See supra* ¶ 14 n.13. The Court's reliance on SDCL 1-26-1(8) is misplaced. This definition merely has the effect of exempting a declaratory ruling from the procedural requirements that accompany a formal adoption of rules. *See* SDCL 1-26-4 (requiring use of "notice, service, and public hearing procedure . . . to adopt, amend, or repeal a permanent rule"). In this case, the distinction between a *rule* (i.e., what a rule says) and a *ruling* (i.e., what the agency thinks a rule means) is a distinction without significance—both outline an administrative agency's likely course of conduct under the relevant circumstances. Yet, under the Court's reading of *Homestake Mining*, a nonaggrieved party would be permitted to appeal the latter but not the former.

20. Despite the Court's suggestion otherwise, the original action in *Small* was a contested case before an administrative agency (Department of Social Services). The Smalls attempted to appeal into the circuit court, but based on a misreading of *Homestake Mining*, they believed the proper procedure to appeal into the circuit court was by filing a declaratory-judgment action under SDCL 1-26-14 instead of under SDCL 1-26-30. *Small*, 2003 S.D. 29, ¶¶ 16-17, 659 N.W.2d at 18-19. We rejected their appeal because they failed to properly appeal DSS's final decision, and we unanimously held: "*Homestake* . . . stands for the proposition that *in contested cases*, like the Smalls', rules can be contested by the appeal authorized by SDCL 1-26-30." *Id.* ¶ 19, 659 N.W.2d at 19 (emphasis added). Thus, a careful reading of *Small* indicates it is not inapplicable as the Court claims.

-23-

rights or relations before an actual injury occurs, courts ordinarily will not render decisions involving future rights contingent upon events that may or may not occur." *Boever*, 526 N.W.2d at 750.

[¶32.] The Court erroneously concludes that the case requirement is satisfied simply because—according to the Court—SDCL 1-26-30 grants appellate jurisdiction. On the contrary, the question whether a court has jurisdiction is not synonymous with the question whether an appeal presents a justiciable case. A court should decline to decide an issue in the absence of an injury *even if the court has jurisdiction to do so. Boever*, 526 N.W.2d at 750. To conclude otherwise leads to unreasonable results. Under SDCL 15-26A-3, for example, this Court has appellate jurisdiction over any judgment of a circuit court. According to the Court's reasoning, then, this Court should never dismiss such an appeal for lack of a case. Yet, because a court that lacks jurisdiction can do nothing but dismiss for lack of jurisdiction, *Cadle Co. v. Shabani*, 4 So. 3d 460, 463 (Ala. 2008), presumably we have had appellate jurisdiction in every instance in which we have invoked the case requirement to decline deciding an issue. *See, e.g.*, *Kvasnicka*, 2013 S.D. 25, ¶¶ 21-24, 829 N.W.2d at 128-29 (declining to decide question on appeal for lack of a case or controversy). Thus, having appellate jurisdiction is a necessary—but not a sufficient—condition to deciding an issue on appeal.

[¶33.] Leach has not presented a case or controversy for judicial review. "A plaintiff must satisfy three elements in order to establish standing as an aggrieved person such that a court has subject matter jurisdiction. First, the plaintiff must establish that he suffered an injury in fact . . . ." *Cable v. Union Cty. Bd. of Cty.*

-24-

*Comm'rs*, 2009 S.D. 59, ¶ 21, 769 N.W.2d 817, 825 (citation omitted). Standing cannot be established unless the alleged injury is "actual or imminent" and not "hypothetical[.]" *Id.* Leach does not claim to have been injured by the Department's ruling, nor does he claim to represent a client injured by the Department's ruling.[21] In other words, Leach asked the circuit court to interpret a statute, SDCL 62-1-1(6), and declare the rights of a hypothetical third party hypothetically affected by the Department's declaratory ruling. As we unanimously held in *Boever*, "judicial machinery should be conserved for problems which are real and present or imminent, not squandered on problems which are abstract or hypothetical or remote." 526 N.W.2d at 750 (quoting *Gottschalk v. Hegg*, 228 N.W.2d 640, 643-44 (S.D. 1975)). Therefore, Leach does not have standing, and the circuit court correctly dismissed his appeal.[22]

_____

21. Leach conceded in his petition to the Department that in every actual case in which the question whether a discretionary bonus is included in the statutory definition of *earnings* under SDCL 62-1-1(6) has arisen, the employers and insurance companies involved have actually agreed to include discretionary bonuses in their calculations.

22. The Court erroneously concludes that this standing argument is based on Article III of the U.S. Constitution. As is evident from *this Court's* past decisions cited in this writing, *see supra* ¶¶ 31-33, the standing requirement is alive and well as a matter of *this Court's* jurisprudence.

    Even so, the Court claims that *Kvasnicka*, *Cable*, and *Boever* are "facially inapposite." *See supra* ¶ 14 n.15. Yet, the applicability of these cases to the present one is obvious. Each of these cases involved an appellate court refusing to decide an issue presented on appeal for lack of standing. In rejecting this well-established principle, the Court apparently concludes that while this Court can refuse to expend its judicial resources on hypothetical questions, a circuit court serving an appellate function is not similarly permitted to protect its resources.

(continued . . .)

[¶34.]     In practical terms, Leach's appeal to the circuit court is meaningless. Even if the court decides in his favor on the merits, what has he accomplished? Because he asserts no injury—and because there was no adverse party to be bound by the court's decision—a favorable decision carries no immediate benefit. Additionally, as the Court concedes, remanding Leach's appeal to the circuit court for a decision on the merits precludes a review of the merits by this Court. *See supra* ¶ 19 ("[O]nce Leach is afforded his statutory rights by a circuit court's review on the merits, this Court will have no jurisdiction to review the circuit court's decision because Leach will have lost his 'aggrieved' party status."). However, a circuit-court opinion has no precedential effect. *Cf. Yankton Prod. Credit Ass'n v. Jensen*, 416 N.W.2d 860, 862 (S.D. 1987). Under the DJA, the next employer to come along that is involved in an actual case can simply ask another circuit court to declare the meaning of *earnings*. SDCL 21-24-3. Thus, a favorable decision from the circuit court on remand carries no future benefit either. Because Leach's appeal offers no benefit whatsoever—even if successful on remand—this case presents a classic example of squandered judicial resources.[23]

_____

(. . . continued)

> Even if this writing relied on Article III cases, however, the Court's reliance on *Application of Northern States Power Co.*, 328 N.W.2d 852 (S.D. 1983), is misplaced. Regardless of what our view might have been in 1983, we have since unanimously incorporated federal analysis into our recent decisions. *See Cable*, 2009 S.D. 59, ¶ 21, 769 N.W.2d at 825-26 (incorporating federal-standing requirements as defined in *Lujan*, 504 U.S. 555, 112 S. Ct. 2130, and dismissing administrative appeal for lack of standing).

23.     Neither will Leach be prejudiced if denied an appeal. As noted, Leach does not allege any injury. Furthermore, SDCL 1-26-30 "does not limit utilization of or the scope of judicial review available under other means of review,

(continued . . .)

**Conclusion**

[¶35.] The Court jumps through a staggering number of hoops in order to grant Leach an appeal. Subscribing to the Court's opinion requires concluding: (1) that the Legislature intended to permit the appeal of a *ruling* in an uncontested case but not a *rule*, despite the lack of material distinction between the two; (2) that the Legislature intended the 1977 Amendment to be only half disjunctive, permitting an appeal in an *uncontested* case if remedies are exhausted but not permitting an appeal of a *contested* case without exhausting remedies; (3) that the Legislature intended to require a circuit court to determine hypothetical questions of law on appeal but bar it from doing so directly; (4) that the Legislature intended to vest terminal appellate jurisdiction in uncontested cases with the circuit court instead of this Court; (5) that a remedy can exist where there is no injury; and (6) that SDCL 1-26-30's grant of appellate jurisdiction trumps well-established standing requirements even though other appellate-jurisdiction-granting statutes do not. After all of this effort, Leach is still left with an appeal that will consume judicial resources but offer absolutely no benefit now or in the future.

[¶36.] Our previous decisions in *Homestake Mining* and *Small*, as well as other portions of the APA and the DJA, establish that the 1977 Amendment did not create a right of appeal in an uncontested case. Even if it had, the absence of an alleged injury logically precludes the Court's conclusion that Leach "exhausted

---

(. . . continued)

redress, or relief, when provided by law." If the meaning of SDCL 62-1-1(6) ever arises in an actual case in the future, Leach is free to preemptively seek a declaratory judgment under the DJA or to simply appeal the Department's adverse decision in a contested case.

-27-

administrative remedies." The absence of an injury also means that Leach has not presented a case or controversy for review; instead, Leach merely seeks to validate his own legal opinion. Furthermore, an appeal before the circuit court offers no potential benefit to Leach. For all of the foregoing reasons, the circuit court properly dismissed Leach's appeal. Therefore, I would reverse the circuit court's vacation of the Department's ruling but otherwise affirm the court's dismissal of Leach's appeal.